Charles M. Coate, Esq. (SBN: 140404)
Theresa E. Johnson, Esq. (SBN: 254123)
ABRAMS COATE LLP
12400 Wilshire Boulevard, Suite 1060
Los Angeles, California 90025
Tel: (310) 576-6161
Fax: (310) 576-6160
Email: ccoate@abramscoate.com
Email: tjohnson@abramscoate.com
Attorneys for Plaintiff Team Angry Filmworks, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| TEAM ANGRY FILMWORKS, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LOUISE A. GEER, as Trustee of the DILLE FAMILY TRUST, and Does 1 – 10, inclusive,<br><br>Defendants. | Case No.: 2:15-cv-05880-R-JPRx<br><br>[Hon. Manuel L. Real]<br><br>**OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>**[Declarations of Don Murphy, Robert Nicholas Flint Dille and Charles M. Coate and Evidentiary Objections filed concurrently herewith]**<br><br>Date: October 19, 2015<br>Time: 10:00 a.m.<br>Ctrm: 8 – 2nd Floor |

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION** ……………………………………………………… 1

II.   **STATEMENT OF FACTS** …………………………………………… 3

III.  **A MOTION TO DISMISS IS DISFAVORED AND RARELY GRANTED. BECAUSE THE COMPLAINT SUFFICIENTLY STATES FACTS SHOWING THAT PLAINTIFF IS ENTITLED TO RELIEF, THE INSTANT MOTION IS PROPERLY DENIED IN ITS ENTIRETY.** ……..… 9

IV.   **THIS NOMINAL DEFENDANT BEARS THE BURDEN OF PROOF IN THIS DECLARATORY RELIEF ACTION SEEKING A JUDGMENT OF NON-INFRINGEMENT AS TO THIS PUBLIC DOMAIN WORK, WHICH SHE CANNOT ESTABLISH.** …………………..……………… 10

V.    **PLAINTIFF'S DECLARATORY RELIEF CLAIM FOR A DECLARATION OF NON-INFRINGEMENT EASILY ESTABLISHES A CASE OR CONTROVERSY UNDER THE COPYRIGHT ACT RIPE FOR DETERMINATION BY THIS COURT.** …………………………… 13

VI.   **DEFENDANT IS SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT BASED ON ACTIONS DIRECTED AT THIS FORUM.**…17

      A.    **Legal Standards**…………………………………..……… 17

      B.    **This Court's Exercise of Personal Jurisdiction in California Over Defendant is Proper.** ………………………………… 21

      C.    **In the Alternative, Plaintiff Requests a Continuance of The Matter To Permit Plaintiff To Conduct Limited Jurisdictional Discovery.** ………………………………………..……… 24

      D.    **In the Alternative, Plaintiff Requests Leave To Amend The Complaint.** ……………………………………………..… 25

VII.  **CONCLUSION**………………………………………………… 25

# TABLE OF AUTHORITIES

## STATUTES

Cal. Civ. Proc. Code § 410.10……………………………………………….. 17

Declaratory Judgment Act, 28 U.S.C. §2201…………………………....… 14

Federal Rule of Civil Procedure, Rule 8(a)(2)………………………………... 9

Federal Rule of Civil Procedure, Rule 9……………………………………… 9

Federal Rule of Civil Procedure, Rule 12(b)(2)……………………………… 24

Federal Rule of Civil Procedure, Rule 12(b)(6)…………………………... 9, 10

Federal Rule of Civil Procedure, Rule 15(a)……………………………….... 25

## CASE LAW

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………………………….. 9

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086

    (9th Cir. 2000)………………………………………………… 18, 19, 20

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007)………………….. 9, 10

*Brayton Purcell, LLP, Recordon & Recordon*, 361 F. Supp. 2d 1135, 1140

    (N.D. Cal. 2005) ("Brayton I")……………………………………….. 19

*Brayton Purcell, LLP v. Recordon & Recordon*, 606 F. 3d 1124, 1130

    (9th Cir. 2010) ("Brayton II")……………………………………….. 17

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477-78, 105 S. Ct. 2174,

    85 L. Ed. 2d 528 (1985)…………………………………………. 18, 19, 20

*Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)……. 19, 20

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, (1993) 508 U.S. 83, 94……………... 13

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*,

    106 F.3d 284, 289 (9th Cir. 2007)………………………………….... 19, 20

*Conley v. Gibson*, 355 U.S. 41, 45 (1957)……………………………………... 9

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997)……………... 20

*Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)….. 24

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)…………………... 19

*Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279,
     140 L.Ed.2d 438 (1998)……………………………………………… 19

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249, 129 S.Ct. 788, 792,
     172 L.Ed.2d 582 (2009)…………………………………………….... 10

*Franchise Tax Board of State of California v. Construction Laborers Vacation*
     *Trust for Southern California* (1983) 463 U.S. 1, 19……………….…… 14

*Gordy v. Daily News, L.P.*, 95 F.3d 829, 833 (9th Cir. 1996)……………………..… 20

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.* (1990) 896 F. 2d. 1542,
     1555………………………………………………………………….... 13

*Hall v. Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)………………………. 9

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129
     (9th Cir. 2003)……………………………………………………..… 17, 24

*Household Bank v. JFS Group* (11th Cir. 2003) 320 F. 3d. 1249, 1259-60…..…..… 14

*Independent Trust Corp. v. Stewart Information Services Corp.* (7th Cir. 2012)
     665 F. 3d. 930, 943…………………………………………………….. 25

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)…..... 18

*Klinger v. Conan Doyle Estate, Ltd.*, No. 14-1128 (7th Cir. 2014)…………… 12, 14

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014)….. 10, 11

*Omeluk v. Langsten Sliip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995)…... 17

*On Davis v. The Gap, Inc.* (2d Cir. 2001) 246 F. 3d. 152, 158…………………….... 13

*Rupa Marya, et al. v. Warner/Chappell Music, Inc., et al.,* USDC Case No.
     CV 13-4460-GHK (MRWx)…………………………………………....... 11, 12

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005)……………………… 10

*Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)……………………………. 18

*Silva v. Di Vittorio* (9th Cir. 2011) 658 F. 3d. 1090, 1105…………………………... 25

*Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008)…………………... 9

*Sobini Films v. Tri-Star Pictures, Inc.*, 2001 WL 1824039

    (C.D. Cal. Nov. 21, 2001)……………………………………...…… 15, 16

*Societe de Conditionnement en Aluminum v. Hunter Eng. Co., Inc.* (9th Cir. 1981)

    655 F. 2d 938, 943……………………………………………………….. 13

*Standard Ins. Co. v. Saklad* (9th Cir. 1997) 127 F. 3d 1179, 1181. …………...…… 14

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,

    552 F.3d 430, 434 (6th Cir. 2008)…………………………………...…… 10

*U.S. v. Corinthian Colleges* (9th Cir. 2011) 655 F. 3d 984, 995………………….. 25

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24

    (9th Cir. 1977)……………………………………………………………... 24

*Williams v. Bridgeport Music, Inc.*, No. CV-13-6004-JAK (AGRx), 2014

    WL 7877773, at *10 (C.D. Cal. Oct. 30, 2014)……………………………… 11

*Yahoo! Inc. v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433 F.3d 1199,

    1205 (9th Cir. 2006)…………………………………………………… 17, 18

*Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995)………………... 20

## OTHER LEGAL AUTHORITIES

5 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 1357 (1969)…….. 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The instant motion to dismiss Plaintiff Team Angry Filmworks, Inc.'s ("Plaintiff") Complaint brought by Defendant Louise A. Geer, Trustee of the Dille Family Trust ("Defendant") is misleading to the Court and properly denied in its entirety. There are sufficient allegations and ample facts that cannot be disputed establishing the existence of a ripe controversy warranting a determination in this forum on Plaintiff's declaratory relief claim as to this public domain work. The evidentiary record before this Court confirms both Defendant and her counsel/law partner/husband made direct and express threats (both written and verbal) to file claims under copyright and trademark seeking injunctive relief against Plaintiff, its principal Don Murphy and their agents and servants. Correspondingly, one individual on the receiving end of similar threats is the screenwriter Flint Dille that Plaintiff has retained to write, and who is co-writing the screenplay adaptation of *Armageddon 2419 A.D.*, the public domain work at issue in which the character "Anthony Rodger" aka "Buck Rodgers" was introduced. It is telling that Defendant never confirms that she has no intention to sue Plaintiff; she cannot, given the verbal threats that have been made in addition to the myriad of letters sent by her and lawyer/partner/husband Dan Herman to the contrary.

Correspondingly, the allegations of the Complaint and the evidentiary record before the Court are more than sufficient to establish this Court's exercise of personal jurisdiction over Defendant, who is sued as the trustee of the Dille Family Trust governed by California law. Contrary to the misleading Declaration submitted by Ms. Geer (an attorney), the Dille Family Trust has in fact maintained long-standing and on-going efforts to license rights in the "Buck Rogers" character at issue here in California both through both an exclusive licensing agent based in California as well as California counsel.  The evidence also reflects that Geer's

lawyer/partner/husband Dan Herman has repeatedly attended the Comic-Con convention in California in recent years in an effort to exploit the literary character also at issue here. Unquestionably, threats of impending legal action made by Defendant and her counsel/law partner/husband have been received by Plaintiff, its principal Don Murphy and their associates in California, and the resultant harm has been suffered by them in California.

Moreover, all of the development and marketing efforts and monies spent in developing the motion picture based on deceased author Philip Francis Nowlan's *Armageddon 2419 A.D.* have occurred in the State of California, and Plaintiff has suffered and will continue to suffer harm in California absent the issuance of the requested declaratory relief sought herein. Further, given the Central District of California's familiarity with copyright matters, public policy dictates that this forum is particularly well suited to adjudicate this dispute regarding the extent of protection that can be afforded to a work that has entered the public domain.

On the other hand, Plaintiff (a California corporation) has no meaningful contacts with Pennsylvania, does not own property or maintain an office or place of business in Pennsylvania, and is unaware of any assets, records, files or documents that it has in the State of Pennsylvania.  Under the circumstances, the litigation of this copyright dispute in Pennsylvania regarding events that have caused effects exclusively here in the State of California would present a substantial hardship for Plaintiff.  Clearly, a showing has been made that even though this declaratory relief defendant has not yet filed a claim against Plaintiff she and her husband on behalf of the Dille Family Trust have emphatically asserted its right to bring such a claim. Under the circumstances there is no basis to force Plaintiff to prosecute this declaratory relief claim in Pennsylvania, as there is no factual or legal basis which would warrant dismissal.  Accordingly, the instant motion to dismiss is properly granted in its entirety.

## II.    STATEMENT OF FACTS

Plaintiff Team Angry Filmworks, Inc. (generally known to the public and in Hollywood as "Angry Films") is a motion picture development and production company, with its office address at 1416 N. La Brea, Los Angeles, CA 90028. (Declaration of Don Murphy ("Murphy Dec.") ¶1.)  Its president Don Murphy is a motion picture producer and his production credits include "Natural Born Killers," "The League of Extraordinary Gentlemen," "From Hell" and "The Transformers" motion pictures franchise.  Motion pictures on which he has acted as a producer have generated in excess of four billion dollars in box office revenues. (Murphy Dec. ¶2.)

Plaintiff Team Angry Filmworks, Inc. is currently developing a motion picture project based upon Philip Nowlan's novella entitled *Armageddon 2419 A.D.* including the character of 'Anthony Rogers' aka 'Buck Rogers' who first appeared therein. In connection with Plaintiff's development of the motion picture project, it is involved in the creation of a screenplay adaptation of *Armageddon 2419 A.D.*, which will necessarily include utilization and portrayal of the character 'Buck Rogers.' One of the screenwriters of Plaintiff's adaptation is Robert Nichols Flint Dille (commonly known as "Flint Dille"). (Murphy Dec. ¶3.)

Flint Dille is a screenwriter, game designer and visiting scholar at the University of Southern California, and is also a resident of Los Angeles, California. (Declaration of Robert Nichols Flint Dille ("Dille Dec.") ¶2.)  He also happens to be one of two sole beneficiaries of the Dille Family Trust, his sister Lorraine Williams being the other.  The Dille Family Trust is a California Trust governed by California law (see also Mx. at p. 3:2-3, Dec. of Louise A. Geer ("Geer Dec.") at ¶3).  After the death of his father in 1983 and his mother in 2010, and the resignation of a previous Trustee, they appointed a lawyer, Defendant Louise Geer, as the successor Trustee. She and her husband Dan Herman are partners in the Geer and Herman P.C. law

firm.  Upon Ms. Geer's succeeding as trustee, Mr. Dille was asked to sign a Waiver of Conflict of Interest for the Geer and Herman law firm so that they may do some legal work that needed to be done.  However, Mr. Dille as beneficiary of the Trust was never informed by them or anyone else that the situs of the Trust had been transferred to Illinois until after he recently had an opportunity to review Ms. Geer's declaration supporting Defendant's instant motion.  (Dille Dec. ¶3.)

Notwithstanding, Ms. Geer and Mr. Herman have since engaged in what appears to be endless litigation, and have been paying themselves and others in apparent breach of their fiduciary duties.  Not only has Mr. Dille received no benefit as beneficiary, but he believes they are responsible for having run the Trust deep into debt and seriously damaging what value remains in the property by intimidating and suing people as a means of persuasion.  (Dille Dec. ¶4.)

Plaintiff Team Angry Filmworks, Inc. publicly announced its development of the motion picture project based upon deceased author Philip Francis Nowlan's *Armageddon 2419 A.D.* at Comic-Con in San Diego, California in July 2015. Plaintiff has retained the services of Don Murphy and Susan Montford as producers on the project, screenwriters Flint Dille and Ed Neumaier to write the screenplay adaptation currently underway based on an already completed written treatment thereof, and has hired a visual effects supervisor to start previsualization on the movie in California.  (Murphy Dec. ¶4; Dille Dec. ¶5.)

In response to this public announcement and a Deadline Hollywood article to the same effect appearing on July 10, 2015, on the same day Mr. Dille received a voicemail in California from Dan Herman as counsel for The Dille Family Trust, threatening to sue Don Murphy, president of Team Angry Filmworks, Inc. (commonly known as "Angry Films") and its affiliates in connection with the *Armageddon 2419 A.D.* project in "every court in the land."  Mr. Herman informed

him that he was in San Diego, California for Comic-Con but would be leaving the convention early "to sue them." (Dille Dec. ¶6.)

Thereafter, Mr. Dille's lawyer Richard Thompson who is based in Los Angeles, California received a call in California from Dan Herman together with the Trust's licensing representative Jane MacGregor as well.  On such call they both emphatically instructed them and Team Angry Filmworks, Inc. (commonly known as "Angry Films") as well to cease and desist from developing the motion picture project based upon Philip Nowlan's novella entitled *Armageddon 2419 A.D.* along with similar threats to sue if such demands were not complied with.  (Dille Dec. ¶7.) Mr. Murphy previously personally met with Ms. MacGregor in California who identified herself to him as the exclusive licensing agent for the Dille Family Trust responsible for negotiating all film and television deals on its behalf, including deals for character licensing, and she is based in or around Thousand Oaks, California. (Murphy Dec. ¶7.)

On such call, Mr. Herman asserted that The Dille Family Trust had not given Team Angry Filmworks, Inc. (commonly known as "Angry Films") or anyone affiliated with it permission to license or use any elements under the "Buck Rogers Universe," including Mr. Dille, and that the copyright in *Armageddon 2419 A.D.* was owned by The Dille Family Trust. Mr. Herman concluded this call by indicating that unless the demand to "cease and desist" was complied with, immediate legal action seeking injunctive relief under copyright and trademark would be initiated against Team Angry Filmworks, Inc.'s (commonly known as "Angry Films") president Don Murphy, and their affiliates, including Mr. Dille.  (Dille Dec. ¶8.)

Mr. Herman and his wife, Trustee Louise Geer (who are both lawyers) then threatened the legal license of Mr. Thompson, which was particularly outrageous given the fact that Mr. Thompson had also been the Dille Family Trust's lawyer for over a decade in California representing the Trust on a number of deals involving

"Buck Rogers," both before and during Louise Geer's appointment as successor Trustee.   After forcing Mr. Thompson to resign as their attorney, Ms. Geer and Ms. MacGregor did an about-face and asked him to separately represent them on a "Buck Rogers" television deal. (Dille Dec. ¶9.)

On or about July 28, 2015, Mr. Thompson received a letter as Mr. Dille's counsel in California signed by Defendant Louise Geer on behalf of the Dille Family Trust.  Again Ms. Geer asserted that the Dille Family Trust had not given permission or license for the use of "Buck Rogers" or any of the elements of the Buck Rogers Universe to Mr. Dille or to Team Angry Filmworks, Inc. (Angry Films' Don Murphy).  The letter also accused Mr. Dille of acting to damage the interests of the Dille Family Trust and the interests of my co-beneficiaries, asserting that he may be liable to the Trust and other beneficiaries for any damages caused, and threatening to proceed with legal action if a satisfactory response was not received within ten days.  (Dille Dec. ¶10.)

The aggressive position taken by Louise Geer is surprising as she appears to be functioning solely on behalf of the other Trustee, Flint Dille's sister Lorraine Dille. Lorraine and Flint were both told multiple times years ago by their father Robert Dille that he allowed *Armageddon 2419* to lapse in the public domain for strategic reasons, due to an ongoing dispute with the heirs of the author Mr. Nowlan. Thus, both Lorraine Dille and Louise Geer are fully aware that that the original novella including the character of "Anthony Rogers" a/k/a "Buck Rogers" has entered the public domain but nonetheless appear intent on litigating a meritless claim. (Dille Dec. ¶11.)

Thereafter, on or about July 30, 2015, Plaintiff Team Angry Filmworks, Inc.'s president Don Murphy had the opportunity to personally speak with Mr. Herman by phone while Mr. Murphy was in California shortly after speaking with his wife, Defendant Louis Geer, who was oddly abusive and threatening and concluded her

conversation with him while he was in California by hanging up on him. Prior to hanging up, Ms. Geer made it clear that that The Dille Family Trust had not given Mr. Murphy or anyone affiliated with him permission to license or use any elements under the "Buck Rogers Universe," including Flint Dille, and that the copyright in *Armageddon 2419 A.D.* was owned by The Dille Family Trust.  (Murphy Dec. ¶10.)

At this time Mr. Herman confirmed that both he and his wife, Ms. Geer, were now in Toronto (Canada) and twice indicated during this threatening phone conversation while Mr. Murphy was in California and in which Mr. Herman repeatedly used profanity that a complaint seeking injunctive relief against Mr. Murphy and others would soon be filed in Pennsylvania.  Mr. Herman further threatened him with words to the effect that he would tie him up in legal proceedings for "years."  (Murphy Dec. ¶11.)

Mr. Herman subsequently sent to Mr. Murphy's attention three letters via courier to the office address of Plaintiff, in each of them acting as if he were the actual Trustee rather than just the husband of the Trustee, Louise Geer.  Two letters were sent on August 4, 2015, one of which was a "Cease and Desist" letter addressed to Mr. Murphy individually and on behalf of Team Angry Filmworks, Inc. ("Angry Films") demanding that he and his company cease and desist immediately from utilizing the purported intellectual property of the Dille Family Trust in the character of Buck Rogers in creation of a motion picture, and warning that if they continue to do so "we will have no alternative but to enjoin your illegal and unauthorized behavior in an appropriate court of proper jurisdiction in an appropriate venue."  The second letter of the same date further accused Mr. Murphy of numerous wrongdoings and again threatened that the Dille Family Trust may "seek all remedies at law in the appropriate forum to permanently restrain [his] conduct and additionally seek damages against [him] personally for interference with the business affairs" of the Trust.  The third letter sent on August 6, 2015 again

1    threatened litigation and took an increasingly unprofessional and abusive tone.
2    (Murphy Dec. ¶12, Ex. "A.")

3        Flint Dille has subsequently rescinded his conflict of interest waiver with the
4    Geer and Herman law firm.  He has also requested the resignation of Louise Geer as
5    the Trustee of the Trust of which he is a beneficiary.  Instead of resigning or
6    withdrawing due to direct conflict of interest, Ms. Geer responded by filing a "Writ
7    of Summons" dated August 31, 2015 notifying Mr. Dille that an action has been
8    filed against him on an unspecified claim in a Pennsylvania Court and reflecting that
9    Ms. Geer is the attorney on behalf of the plaintiff.  The action is entitled <u>The Dille</u>
10   <u>Family Trust, Louise Geer Trustee v. Robert Nichols Flint Dille Beneficiary</u>,
11   Commonwealth of Pennsylvania, County of Lawrence, File No. 2015-10848.  (Dille
12   Dec. ¶13.)

13       However, neither Plaintiff, its president Don Murphy, nor Flint Dille own
14   property in Pennsylvania, or maintain an office or place of business in Pennsylvania.
15   Nor do they have telephone numbers, mailing addresses, bank accounts, or other
16   personal property in Pennsylvania.  Nor are they aware of any assets, records, files
17   or documents that they have in the State of Pennsylvania.  Significantly, none of the
18   development and marketing efforts and monies spent in connection therewith
19   (including adapting a screenplay) based on Philip Francis Nowlan's *Armageddon*
20   *2419 A.D.* that have been met with imminent threatened legal action by Defendant
21   and her partner-husband have occurred in Pennsylvania.  Rather they have all
22   occurred in the State of California. (Murphy Dec. ¶15-17; Dille Dec. ¶14.)

23       For the reasons set forth herein, there are sufficient allegations and ample
24   facts that cannot be disputed establishing the existence of a ripe controversy
25   warranting a determination in this forum on Plaintiff's declaratory relief claim as to
26   this public domain work.

27

### III. A MOTION TO DISMISS IS DISFAVORED AND RARELY GRANTED. BECAUSE THE COMPLAINT SUFFICIENTLY STATES FACTS SHOWING THAT PLAINTIFF IS ENTITLED TO RELIEF, THE INSTANT MOTION IS PROPERLY DENIED IN ITS ENTIRETY.

First, it is axiomatic that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Hall v. Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) (citing 5 C. Wright & A. Miller, Federal Practice & Procedure, Civil § 1357, at 598 (1969).) A claim should not be dismissed under Federal Rule of Civil Procedure, Rule 12(b)(6) if the Court determines that the complaint sufficiently states a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957) (abrogated in other respects by *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).

Except as provided in Federal Rule of Civil Procedure, Rule 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8(a)(2) "[does] not require heightened fact pleading or specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, at 678.

Moreover, in determining whether a plaintiff's complaint is sufficient, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008).

1    When a  claim is challenged under F.R.C.P. Rule 12 (b) (6), the court
2  presumes that all well-pleaded allegations are true, resolves all reasonable doubts
3  and inferences in the pleader's favor, and views the pleading in the light most
4  favorable to the non-moving party.  *See Fitzgerald v. Barnstable Sch. Comm.*, 555
5  U.S. 246, 249, 129 S.Ct. 788, 792, 172 L.Ed.2d 582 (2009).  No claim will be
6  dismissed merely because the trial judge disbelieves the allegations or feels that
7  recovery is remote or unlikely.  *See Bell Atlantic Corp.*, supra, at 555-56.  The
8  burden lies with the moving party.  *See Total Benefits Planning Agency, Inc. v.*
9  *Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

10    Plaintiff has easily met its burden here and the Motion is properly denied in
11  its entirety.

12  **IV.    THIS NOMINAL DEFENDANT BEARS THE BURDEN OF PROOF IN**
13  **THIS DECLARATORY RELIEF ACTION SEEKING A JUDGMENT OF**
14  **NON-INFRINGEMENT AS TO THIS PUBLIC DOMAIN WORK, WHICH**
    **SHE CANNOT ESTABLISH.**

15
16    Although the motion appears to suggest Plaintiff bears the burden of proof in
17  this case, the Supreme Court recently held otherwise in the analogous *Medtronic,*
18  *Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014). In *Medtronic*, the
19  plaintiff sought a declaratory judgment that its products did not infringe the
20  defendant's patents. *Id.* at 847. The Court placed the burden of proof on the
21  patentee, even though it was nominally the defendant. *Id.* at 849. The Court
22  observed that the case of *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005)
23  articulated the basic rule for where the burden of proof lies (i.e. with Plaintiffs on all
24  issues because the default rule places the burden of proof "on the party seeking
25  relief"), but that *Schaffer* also characterized "declaratory judgment suits like the one
26  at issue here" as an "exception to the basic rule." *Id.* at 851.

27

In a very recent opinion by Judge George H. King of the U.S.D.C. Central District of California ruling on a motion for summary judgment on a declaratory relief claim on a similar public domain question arising out of a purported copyright in the common "Happy Birthday" song, the Court found *Medtronic* controlling in that action, just as it should be here. In pertinent part Judge King stated:

> Here, too, Plaintiffs have sought a declaratory judgment in the shadow of a threatened infringement suit. (*See, e.g.*, FACC at ¶ 122 ("Faced with a threat of substantial penalties for copyright infringement, on or about March 26, 2013, plaintiff GMTY was forced to and did pay defendant Warner/Chappell the sum of $1,500 for a synchronization license . . . .").) Accordingly, just as in *Medtronic*, there is no reason to relieve the alleged owners of the intellectual property of the usual burden of proof just because they are nominally the defendants in this declaratory judgment action. *See also Williams v. Bridgeport Music, Inc.*, No. CV-13-6004-JAK (AGRx), 2014 WL 7877773, at *10 (C.D. Cal. Oct. 30, 2014) (applying *Medtronic* to a declaratory judgment copyright case and concluding that the defendants have the burden of proof).

*Rupa Marya, et al. v. Warner/Chappell Music, Inc., et al.,* USDC Case No. CV 13-4460-GHK (MRWx) (September 22, 2015 Memorandum and Order re: Cross-Motions for Summary Judgment, etc.)

Indeed, the facts of the *Marya* case are on point with those of the instant action which warrant a similar result here.  In *Marya*, Plaintiffs filed a class action to declare invalid Defendants Warner/Chappell Music, Inc., et al.'s purported copyright in the famous song Happy Birthday To You ("Happy Birthday"), contending that Defendants did not own a copyright in the "Happy Birthday" lyrics on grounds that they had entered the public domain. Correspondingly, the Plaintiffs asserted that Defendants should be compelled to return the "millions of dollars of unlawful licensing fees" they had collected by wrongfully asserting copyright ownership in the Happy Birthday lyrics.  Defendants contended that their copyright registration entitled them to a presumption of validity, but the Court disagreed, ultimately denying Defendants' motion for summary judgment and granting

1   Plaintiffs' cross-motion reasoning that because Defendants' purported predecessor-
2   in-interest never acquired the rights to the "Happy Birthday" lyrics many years ago,
3   Defendants did not own a valid copyright in the "Happy Birthday" lyrics either. *Id.*
4   at p. 43.

5        Similarly, here, Defendant Louise A. Geer as Trustee of the Dille Family
6   Trust likewise bears the burden of proof as she is a nominal defendant with respect
7   to this nominal Plaintiff's declaratory relief claim. As set forth below, it was
8   Defendant's cease and desist demands and threats of litigation which were aimed at
9   Plaintiff and others in California, which made clear that if such demands were not
10  met that Defendant would initiate suit imminently. As such, this Plaintiff seeking a
11  declaration of rights is properly considered a nominal Plaintiff, and the nominal
12  Defendant bears the burden of proof in this case, not Plaintiff.

13       Moreover, the Court should properly rule in favor of this declaratory relief
14  plaintiff as Judge King did with the *Marya* plaintiffs, given that the Philip Nowlan
15  novella *Armageddon 2419* which introduces the character of "Anthony Rogers"
16  a/k/a "Buck Rogers" entered the public domain since the end of 2010 throughout the
17  world and even earlier in the United States. Indeed, once *Armageddon 2419* entered
18  the public domain, every character and event in that book not only became available
19  to the public to use as desired, but the right to make derivative works based on such
20  character is also available. In the recent case of *Klinger v. Conan Doyle Estate, Ltd.*,
21  No. 14-1128 (7th Cir. 2014) clear precedent was established that once the copyright
22  has expired, the characters are no longer protectable by copyright or trademark.

23       In *Klinger* the Seventh Circuit clearly stated (and the Supreme Court declined
24  to hear the appeal) that once the original Sherlock Holmes story entered the public
25  domain, the public was free to utilize the character as it saw fit. The remaining plots
26  and completely unique elements (if any) of the remaining ten Sherlock Holmes
27  stories remain under copyright protection but the character is free and clear.  The

1    same is true here of the character of "Anthony Rogers" a/k/a "Buck Rogers," as his

2    origin and background based in the public domain work *Armageddon 2419* are free

3    to anyone to interpret. Indeed, the Dille Family Trust beneficiaries and Trustee are

4    well aware of the same.  (Dille Dec. ¶10.)

5         Accordingly, because this nominal Defendant cannot claim copyright

6    ownership in a character which originated in a public domain work, it cannot meet

7    its burden to of proof to prevail over Plaintiff's proper declaratory relief claim for

8    non-infringement under the Copyright Act.

9    **V.    PLAINTIFF'S    DECLARATORY    RELIEF    CLAIM    FOR    A**
     **DECLARATION OF NON-INFRINGEMENT EASILY ESTABLISHES A**
10   **CASE OR CONTROVERSY UNDER THE COPYRIGHT ACT RIPE FOR**
     **DETERMINATION BY THIS COURT.**
11

12        At the outset federal courts have long recognized that declaratory relief is

13   frequently sought in intellectual property disputes.  (e.g., trademark, copyright,

14   unfair competition, patents etc.)   For example, claims by patent holders that

15   competitors are infringing their patents are "indisputably appropriate" for

16   declaratory relief.  Otherwise, competitors might have no practical recourse but to

17   pay whatever royalty was demanded.  *Societe de Conditionment en Aluminum v.*

18   *Hunter Eng. Co., Inc.* (9th Cir. 1981) 655 F. 2d 938, 943. Conversely, competitors

19   facing infringement claims can sue for a judgment that the patent is invalid.

20   Otherwise, competitors would face an "*in terrorem* choice between incurrence of a

21   growing potential liability for patent infringement and abandonment of their

22   enterprise."  *Cardinal Chem. Co. v. Morton Int'l, Inc.*, (1993) 508 U.S. 83, 94.

23        For the same reasons, declaratory relief is frequently sought in copyright

24   disputes.  (*See On Davis v. The Gap, Inc.* (2d Cir. 2001) 246 F. 3d. 152, 158:

25   copyright owner entitled to declaratory relief on copyright infringement claim

26   without showing entitlement to monetary relief; *Hal Roach Studios, Inc. v. Richard*

27   *Feiner & Co., Inc.* (1990) 896 F. 2d. 1542, 1555: held claim for declaratory relief

that other party owned no copyright that would preclude it from exploiting series established case or controversy; "([P]laintiff need not show that an actual charge of infringement has been made by defendant).   It is also relevant, under the circumstances of this case, that Hal Roach Studios has not indicated to Feiner & Co. that it will not institute an infringement action."

Directly analogous here is that a party may seek a declaratory judgment as to whether a particular work will not infringe another's copyright due to works falling in the public domain.  *Klinger v. Conan Doyle Estate, Ltd.* (7th Cir. 2014) 755 F. 3d 496, 499: editor of not yet released anthology of stories inspired by Sherlock Holmes was free to seek declaration of non-infringement because copyright owner's estate threatened to block anthology's distribution and to sue for infringement.  This is precisely what Defendant did and how Plaintiff may appropriately respond.

In turn, federal courts have regularly taken jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question. *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California* (1983) 463 U.S. 1, 19.  It need only be shown that the declaratory relief defendant could bring such a claim, not that it necessarily will do so.  *Standard Ins. Co. v. Saklad* (9th Cir. 1997) 127 F. 3d 1179, 1181.

Moreover, subject matter jurisdiction exists if the defendant could have brought a federal claim when the declaratory relief action was filed.  Unless the federal claim is settled or released, subject matter jurisdiction is not ousted by the defendant later expressly disavowing its federal claim or choosing to assert only state law rights in a state court action.  *Household Bank v. JFS Group* (11th Cir. 2003) 320 F. 3d. 1249, 1259-60.

Here, Plaintiff's claim for a declaration of non-infringement easily establishes a case or controversy under the Declaratory Judgment Act, 28 U.S.C. §2201, that is

1   ripe for determination by this Court.  As set forth herein and in the accompanying

2   Declarations of Don Murphy and Robert Nichols Flint Dille (commonly known as

3   "Flint Dille"), Plaintiff is currently developing a motion picture project based upon

4   Philip Nowlan's novella entitled *Armageddon 2419 A.D.* including the character of

5   'Anthony Rogers' aka 'Buck Rogers' who first appeared therein. In connection with

6   its development of the motion picture project, it is involved in the creation of a

7   screenplay adaptation of *Armageddon 2419 A.D.*, which will necessarily include

8   utilization and portrayal of the character 'Buck Rogers.' One of the screenwriters of

9   Plaintiff's adaptation is Robert Nichols Flint Dille (commonly known as "Flint

10  Dille"), one of the two sole beneficiaries of the Dille Family Trust.

11          After Plaintiff publicly announced its development of the motion picture

12  project based upon deceased author Philip Francis Nowlan's *Armageddon 2419 A.D.*

13  at Comic-Con in San Diego, California in July 2015, Defendant and her husband

14  (who was in attendance at Comic-Con in California) and the Trust's licensing

15  representative (who resides in California) began threatening legal action against

16  Plaintiff, its president, its screenwriter on the project (and co-beneficiary of the

17  Trust) Flint Dille, and Mr. Dille's attorney through a series of phone calls and letters

18  to these persons all in California.

19          Although Defendant in its motion relies heavily on the case of *Sobini Films v.*

20  *Tri-Star Pictures, Inc.*, 2001 WL 1824039 (C.D. Cal. Nov. 21, 2001) in support of

21  its position, the *Sobini* case is easily distinguished here.  Primarily, as Defendant

22  points out, the *Sobini* court "found no justiciable case or controversy in a declaratory

23  relief action regarding the fictional character 'Zorro' because the plaintiff had not

24  consummated any preliminary agreements regarding the proposed film, had not

25  'obtained commitments from 'key talent' such as a director and lead actors,' had not

26  contracted with a writer to create the screenplay, and therefore was not 'immediately

27  prepared' to produce the film.'  *See* Mx at p. 11:14-18, citing *Sobini* at p. 5.

However, in direct contrast to the *Sobini* case, Plaintiff here has undertaken "meaningful preparation" in its development and marketing efforts and spent monies in connection with the motion picture project based on Philip Francis Nowlan's *Armageddon 2419 A.D.* that have been met with imminent threatened legal action by Defendant and her partner-husband. Plaintiff has retained the services of Don Murphy and Susan Montford as producers on the project and screenwriters Flint Dille and Ed Neumaier to write the screenplay adaptation currently underway based on an already completed written treatment thereof. Further, a visual effects supervisor to start previsualization on the project in California has been hired. As such, the menacing threats of imminent legal action against Plaintiff and its president, and others affiliated with the production in another state across the country, which were made to them while in California by two hostile attorneys, pose a serious threat to the motion picture project currently underway following its announcement to the public.

Accordingly, Plaintiff is not "merely seeking an advisory opinion regarding a hypothetical dispute" as urged by Defendant, but is in imminent danger of suffering harm to its motion picture project if it does not receive a declaration of non-infringement by this Court now. Indeed, Defendant has not confirmed in her declaration that she will not institute an infringement action or seek injunctive relief against Plaintiff or its president in Pennsylvania or elsewhere. If two attorneys personally threaten an individual and his company in California with imminent legal action, he and/or his company have the right to take appropriate protective measures through legal action, in this case by filing a declaratory relief claim seeking a declaratory of non-infringement based on a work in the public domain.

Accordingly, as set forth above, there currently exists a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. As such,

Defendant's motion to dismiss the Complaint for a purported failure to state a claim for relief is properly denied.

## VI. DEFENDANT IS SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT BASED ON ACTIONS DIRECTED AT THIS FORUM.

### A. Legal Standards

When opposing a jurisdictional challenge made absent an evidentiary hearing, a plaintiff is required only to make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *See, e.g., Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir. 2003). For purposes of Plaintiff's prima facie showing of personal jurisdiction, uncontroverted allegations in the Complaint must be taken as true and conflicts between the facts contained in the parties' affidavits must be resolved in Plaintiff's favor. *Brayton Purcell, LLP v. Recordon & Recordon*, 606 F. 3d 1124, 1130 (9th Cir. 2010) ("*Brayton II*"). If the Court decides the jurisdictional issue on the basis of the pleadings and supporting declarations, it must be presumed that the facts set forth therein can be proven. *See Omeluk v. Langsten Sliip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995).

When there is no federal statute controlling the Court's exercise of personal jurisdiction, federal courts must look to the forum state's jurisdictional statute to determine whether it is proper to assert personal jurisdiction. *See, e.g., id*. The California long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United Stated." Cal. Civ. Proc. Code § 410.10. Thus, the Court's jurisdictional analysis under California law and federal due process is the same. *Yahoo! Inc. v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

The Due Process Clause requires that a court exercise personal jurisdiction over a defendant only if the defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions

1   of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66
2   S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted).   A court may
3   exercise general jurisdiction over a defendant whose contacts with the forum are so
4   "continuous and systematic" that personal jurisdiction is proper in any action.
5   *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477-78, 105 S. Ct. 2174, 85 L. Ed.
6   2d 528 (1985).   Absent general jurisdiction, a court may also exercise specific
7   jurisdiction over a defendant where "jurisdiction [is] based on their relationship
8   between the defendant's forum contacts and the plaintiff's claim." *Yahoo!* at 1205.

9       This Court can properly exercise general jurisdiction over this Defendant.
10  The standard for establishing general jurisdiction requires that the defendant's
11  contacts be substantial enough to approximate physical presence.   *Bancroft &*
12  *Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).   "Factors
13  to be taken into consideration are whether the defendant makes sales, solicits or
14  engages in business in the state, serves the state's markets, designates an agent for
15  service of process, holds a license, or is incorporated there." *Id.*

16      In the alternative, at a minimum, the Court may exercise specific jurisdiction
17  over the Defendant. Defendant has sufficient "minimum contacts" with California to
18  justify the exercise of specific jurisdiction in California. In order for specific
19  jurisdiction to exist: (1) the non-resident defendant must purposefully direct his
20  activities at, or consummate some transaction with, the forum state or a resident
21  thereof; or perform some act by which it purposefully avails itself of the privilege of
22  conducting activities in the forum, (2) the Plaintiff's claim must be one which arises
23  out of or relates to the defendant's forum-related activities; and (3) the exercise of
24  jurisdiction must be reasonable.   *Yahoo!*, 433 F.3d at 1205.   If Plaintiff meets its
25  burden of satisfying the first two prongs, *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th
26  Cir. 1990), then the burden shifts to the Defendant to set forth a "compelling case"

1  that the exercise of jurisdiction would not be reasonable. *Burger King,* 471 U.S. at

2  476-78.

3       Although it might not be readily apparent from Defendants' Motion, this is a

4  declaratory relief action arising under Copyright law, therefore it is proper for the

5  court to evaluate the first prong of the specific jurisdiction analysis using the

6  purposeful availment or "effects" test expounded in *Calder v. Jones*, 465 U.S. 783,

7  104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *See Brayton Purcell, LLP, Recordon &*

8  *Recordon*, 361 F. Supp. 2d 1135, 1140 (N.D. Cal. 2005) ("Brayton I").  In *Calder*,

9  the Supreme Court held that a foreign act that is both aimed at and has effect in the

10 forum state satisfies the purposeful availment prong of the specific jurisdiction

11 analysis. To establish personal jurisdiction under the *Calder* "effects" test, defendant

12 must have (1) committed an intentional act, (2) expressly aimed at the forum state,

13 (3) causing harm that the defendant knows is likely to be suffered in the forum state.

14 *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

15      Wrongful conduct targeted at a plaintiff whom the defendant knows to be a

16 resident of the forum state is sufficient to satisfy the *Calder* "effects" test.  *See*

17 *Calder*, 465 U.S. at 789[1]; *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F. 3d

18 1082, 1087 (9th Cir. 2000).   An allegation of willful copyright infringement,

19 standing alone, can satisfy the *Calder* "effects" test if the act is aimed at a known

20 forum resident.  *Columbia Pictures Television v. Krypton Broad. of Birmingham,*

21 *Inc.*, 106 F.3d 284, 289 (9th Cir. 2007), rev'd on other grounds, *Feltner v. Columbia*

22 *Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998)

23

24 [1] For example, in *Calder* itself, the defendants were a reporter and an editor of a nationally-circulated

25 tabloid newspaper whom plaintiff, a well-known California resident, accused of libel.  The defendants
   argued that the alleged wrong had no intended nexus with California and that they should be treated like "a

26 welder employed in Florida who works on a boiler which subsequently explodes in California." *Id*.  The
   Supreme Court rejected this proposed analogy, pointing out that "petitioners are not charged with mere

27 untargeted negligence.  Rather, their intentional, and allegedly tortious, actions were expressly aimed at
   California." *Calder*, 465 U.S. at 789.

("Columbia alleges . . . that Feltner willfully infringed copyright owned by Columbia which, as Feltner knew, had its principal place of business in California. This fact alone is sufficient to establish the 'purposeful availment' requirement.") (citing *Calder*, 465 U.S. at 789-90). *See also Brayton I*, 361 F. Supp. 2d at 1140 (noting that although later cases arguably limited *Columbia Pictures'* application in other contexts, "absent a clear indication to the contrary, this court is bound to follow *Columbia Pictures* since it is directly on point inasmuch as the cause of action here is for copyright infringement.")

Additionally, the *Calder* effects test is satisfied by the presence of facts in the Complaint demonstrating individualized targeting by Defendant. *Cf. Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997) (no showing that defendants even knew of the existence of the plaintiffs, let alone targeted them individually); *see also Gordy v. Daily News, L.P.*, 95 F.3d 829, 833 (9th Cir. 1996) (distinguishing certain cases holding that no personal jurisdiction existed under *Calder* on the ground that in those cases targeting was lacking).

The second requirement for specific jurisdiction is that contacts constituting purposeful availment must be the ones that give rise to the current suit. This requirement is measured in terms of "but for" causation. *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995). This requirement is easily met here. But for the intentional acts, Plaintiff would have no need to bring this suit.

The final requirement for specific jurisdiction – reasonableness – is found when jurisdiction comports with fair play and substantial justice. *See Burger King*, 471 U.S. at 476.[2]

---

[2] *Burger King* explicitly places upon the defendant the burden of demonstrating unreasonableness and requires the defendant to put on a "compelling case." *Id.* at 476-77. The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of

1
2

**B.      This Court's Exercise of Personal Jurisdiction in California Over Defendant is Proper.**

3      Here, there are numerous direct contacts with the State of California and
4  public policy dictates that this matter be heard in this forum.  As conceded by
5  Defendant in her motion and supporting declaration, the Trust was formed and
6  organized in the State of California under California law. *See* Mx. at p. 3:2-3, Dec.
7  of Louise A. Geer ("Geer Dec.") at ¶3. Indeed, the Trust agreement reads "This trust
8  agreement is a California contract and creates a California trust, and all of the terms
9  and provisions hereof shall be interpreted according to the laws of the State of
10  California…"  (Trust at ¶2.F.)  Even though the Defendant represents that the Trust
11  situs was changed in 1989 to Illinois, the Instrument Transferring Situs of Trust
12  attached as Exhibit "A" to her declaration makes clear that "[t]his action is not
13  intended to change the provision of Section 2.F that all of the terms and provisions
14  of the Trust Agreement are to be interpreted according to the laws of the State of
15  California." (Geer Dec., Ex. "A.")  Thus, even if the Trust situs may have been
16  transferred, it was transferred to a state (Illinois) other than Defendant's represented
17  place of residence (Pennsylvania), and the Trust is still subject to California law.

18      Moreover, Defendant's threatening conduct has been directed at Plaintiff, its
19  principal, Don Murphy and their agents and servants in Los Angeles, California and
20  Defendant's corresponding efforts to intentionally interfere with the lawful motion
21  picture development of literary material that lies in the public domain has occurred
22  in Los Angeles, California. (Complaint ¶2; Murphy Dec. ¶¶3-17; Dille Dec. ¶¶5-14.)

23      Specifically, as set forth above and in the concurrently filed declarations,
24  Plaintiff Team Angry Filmworks, Inc. is currently developing a motion picture

25
26
27

the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id.*

project based upon Philip Nowlan's novella entitled *Armageddon 2419 A.D.* including the character of 'Anthony Rogers' aka 'Buck Rogers' who first appeared therein. In connection with its development of the motion picture project, it is involved in the creation of a screenplay adaptation of *Armageddon 2419 A.D.*, which will necessarily include utilization and portrayal of the character 'Buck Rogers.' One of the screenwriters of Plaintiff's adaptation is Robert Nichols Flint Dille (commonly known as "Flint Dille"), one of the two sole beneficiaries of the Dille Family Trust.

After Plaintiff publicly announced its development of the motion picture project based upon deceased author Philip Francis Nowlan's *Armageddon 2419 A.D.* at Comic-Con in San Diego, California in July 2015, Defendant and her husband (who was in attendance at Comic-Con in California) and the Trust's licensing representative (who resides in California) began threatening legal action against Plaintiff, its president, its screenwriter on the project (and co-beneficiary of the Trust) Flint Dille, and Mr. Dille's attorney through a series of phone calls and letters to these persons all in California.

Indeed, all of the development and marketing efforts and monies spent in connection with the project (including adapting a screenplay) based on Philip Francis Nowlan's *Armageddon 2419 A.D.* that have been met with imminent threatened legal action by Defendant and her partner-husband have occurred in Pennsylvania. None has occurred in the State of Pennsylvania.

In fact, Plaintiff, its president Don Murphy, the screenwriter on the *Armageddon 2419* motion picture project and one of the two sole Trust beneficiaries Flint Dille, his attorney (and the Trust's former long-time attorney) Richard Thompson, and the Trust's exclusive licensing agent responsible for character licensing Jane MacGregor, are ALL based in California.

On the other hand, neither Plaintiff, its president Don Murphy, nor Flint Dille own property in Pennsylvania, or maintain an office or place of business in Pennsylvania. Nor do they have telephone numbers, mailing addresses, bank accounts, or other personal property in Pennsylvania. Nor are they aware of any assets, records, files or documents that they have in the State of Pennsylvania. Significantly, none of the development and marketing efforts and monies spent in connection therewith (including adapting a screenplay) based on Philip Francis Nowlan's *Armageddon 2419 A.D.* that have been met with imminent threatened legal action by Defendant and her partner-husband have occurred in Pennsylvania. Rather they have all occurred in the State of California.

The menacing threats of imminent legal action against Plaintiff and its president, and others affiliated with the production in another state across the country which were made to them while in California by two hostile attorneys were disturbing and understood by Plaintiff to be genuine threats. It is noted that Mr. Herman has not submitted any declaration in support of the motion, and further that Ms. Geer has not confirmed in her declaration that she will not institute an infringement action or seek injunctive relief against Plaintiff or its president in Pennsylvania or elsewhere. If two attorneys personally threaten an individual and his company in California with imminent legal action, he and/or his company have the right to take appropriate protective measures through legal action.

Under the circumstances, the litigation of this copyright dispute in Pennsylvania regarding events that occurred exclusively here in the State of California involving a number of California residents would present a substantial hardship for Plaintiff Team Angry Filmworks, Inc. As between a Defendant-attorney and Plaintiff, a Defendant-attorney would be better suited to defend the action in this forum where the attorney's threats were received than *vice-versa*. Further, given the Central District of California's familiarity with copyright matters,

public policy dictates that this forum is particularly well suited to adjudicate this dispute.    Accordingly, this Court may properly exercise jurisdiction over this Defendant who has more than minimal contacts with the forum state.

**C.    In the Alternative, Plaintiff Requests a Continuance of The Matter To Permit Plaintiff To Conduct Limited Jurisdictional Discovery.**

If the Court is somehow inclined to grant some or all of Defendants' Fed. R. Civ. P. 12(b)(2) jurisdictional motion, then Plaintiff respectfully requests a continuance of the motion in order to conduct limited jurisdictional discovery. A district court has broad discretion to "permit discovery to aid in determining whether it has in personam jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs*., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (citing *Wells Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406, 430 n.24 (9th Cir. 1977). A court should allow a party to conduct discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* at 430 n.24 (citation and alteration omitted). Discovery should be denied only "when it is clear that [the] discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Id*. The Ninth Circuit has held that denying jurisdictional discovery where further discovery might demonstrate a basis for jurisdiction is an abuse of discretion. *Harris Rutsky & Co.*, 328 F.3d at 1135 [concluding that the district court abused its discretion in denying plaintiff's motion for jurisdictional discovery and remanding the case to allow plaintiff the opportunity to develop the record and make a prima facie showing of jurisdictional facts].

During meet and confer discussions which preceded Defendant's filing of the instant motion, Plaintiff requested that Defendant agree to permit limited jurisdictional discovery to take place prior to a disposition on its motion.  Counsel for Defendant rejected the request out of hand.  A copy of meet and confer correspondence is attached to the Declaration of Charles M. Coate ("Coate Dec.")

¶4, Ex. "A."). Under the circumstances, Plaintiff respectfully submits that such alternative relief is reasonably granted.

### D. In the Alternative, Plaintiff Requests Leave To Amend The Complaint.

Under F.R.C.P. 15 (a) leave to amend "shall be freely given when justice so requires." *U.S. v. Corinthian Colleges* (9th Cir. 2011) 655 F. 3d 984, 995. The standard for granting leave to amend is "generous." *Independent Trust Corp. v. Stewart Information Services Corp.* (7th Cir. 2012) 665 F. 3d 930, 943. In the Ninth Circuit a trial court should grant leave to amend (even if not requested) unless it is clear that the complaint cannot be cured by the allegation of different facts. *Silva v. Di Vittorio* (9th Cir. 2011) 658 F. 3d. 1090, 1105. Here, for reasons stated, Plaintiff contends that there are sufficient allegations and ample facts that cannot be disputed establishing the existence of a ripe controversy warranting a determination in this forum. Assuming *arguendo* that this Court somehow finds otherwise, in the interests of justice Plaintiff should properly be provided with the opportunity to amend its initial complaint.

## VII. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully submits that it has met its pleading obligation and the instant Motion is properly denied in its entirety. Correspondingly, an order compelling the filing of an answer by Defendant is warranted.

Dated: September 28, 2015                         ABRAMS COATE LLP

                                                  By:____/s/ Charles M. Coate_____
                                                  Charles M. Coate
                                                  Theresa E. Johnson
                                                  Attorneys for Plaintiff TEAM
                                                  ANGRY FILMWORKS, INC., a
                                                  California corporation