**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TEAM ANGRY FILMWORKS, INC.,          )
*a California company*,              )
         Plaintiff,      )
                                  )
    v.                    )     Civ. No.  15-1381
                                  )
LOUISE A. GEER, *as Trustee of the*  )
*Dille Family Trust*,                )
         Defendant.      )

## OPINION

CONTI, Chief District Judge

## I.   INTRODUCTION

California film-production company Team Angry Filmworks, Inc. ("plaintiff") calls upon the court to declare that Philip Francis Nowlan's 1928 science-fiction novella *Armageddon–2419 A.D.* ("*Armageddon*") and character "Buck Rogers" entered the public domain, pursuant to the Declaratory Judgment Act (the "DJA"), 28 U.S.C. § 2201(a). As trustee of the Dille Family Trust (the "Trust"), defendant Louise A. Geer ("defendant") filed a motion:

- to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) for failure to present a justiciable controversy under the DJA and Article III of the Constitution; or

- in the alternative, to join necessary parties under Federal Rules of Civil Procedure 12(b)(7) and 19. (ECF No. 55.)

1

Having been fully briefed, defendant's motion is ripe for disposition. For the reasons explained in this opinion, plaintiff fails to allege facts sufficient to establish a justiciable controversy under the DJA and Article III. Accordingly, the court will grant defendant's Rule 12(b)(1) motion to dismiss plaintiff's complaint without prejudice. The court will deny defendant's request to join necessary parties under Rules 12(b)(7) and 19 and plaintiff's evidentiary objections to defendant's exhibits because they are moot. (ECF No. 59.)

## II.   PROCEDURAL HISTORY

On August 8, 2015, plaintiff filed a complaint against defendant in the United States District Court for the Central District of California. (ECF No. 1.) On September 15, 2015, defendant filed a motion in the California district court to dismiss the action for want of personal jurisdiction and Article III standing. (ECF No. 15.) On October 23, 2015, the California district court found venue proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b)(1) and transferred the action to this court under 28 U.S.C. §§ 1404(a) and 1406(a). (ECF No. 27 at 2.)

On November 6, 2015, defendant renewed her Rule 12(b)(1) motion to dismiss plaintiff's complaint in this court. (ECF Nos. 43, 44.) On November 25, 2015, plaintiff filed a brief in opposition to defendant's renewed Rule 12(b)(1) motion to dismiss. (ECF No. 47.)

On January 7, 2016, the court held a hearing on defendant's renewed Rule 12(b)(1) motion to dismiss. (Text Minute Entry, 1/7/2016.) Because plaintiff's complaint failed to allege a justiciable controversy under the DJA and Article III, the court granted defendant's Rule 12(b)(1) motion to dismiss without prejudice. (ECF No. 53.)

On January 29, 2016, plaintiff filed an amended complaint. (ECF No. 54.) On February 19, 2016, defendant filed this motion to dismiss plaintiff's amended complaint, with accompanying exhibits, under Rules 12(b)(1) and 12(b)(7). (ECF Nos. 55, 56, 57.) On March 11, 2016, plaintiff filed a response in opposition to defendant's motion and objections to defendant's exhibits. (ECF Nos. 58, 59.)

## III.  STANDARD OF REVIEW

In this case, the standard of review determines the facts the court must consider in ruling on defendant's Rule 12(b)(1) motion to dismiss. For this reason, the court addresses the standard of review before discussing this case's factual background.

### A.  Rule 12(b)(1) standard

A motion to dismiss challenging the "actual controversy" requirement under the DJA and Article III is properly brought under Rule 12(b)(1) because "'standing is a jurisdictional matter.'" *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir.

2007)). In deciding a Rule 12(b)(1) motion to dismiss, the court must first determine whether the motion presents a "'facial' attack" or a "'factual' attack" on the claim in issue because that distinction determines "how the pleading must be reviewed." *Id.* at 357–58 (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the [subject-matter] jurisdiction of the court" because "some . . . jurisdictional defect," *e.g.*, failure to present a justiciable controversy, "is present." *Constitution Party of Pa.*, 757 F.3d at 358. In reviewing a facial attack, the court "'must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.* (quoting *In re Schering Plough*, 678 F.3d at 243). In other words, a facial attack calls for the court to apply the "same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.* If the defendant challenges jurisdiction in its Rule 12(b)(1) motion before answering the complaint or "otherwise present[ing] competing facts," the Rule 12(b)(1) motion is, "by definition, a facial attack." *Id.* (citing *Mortensen*, 549 F.2d at 892 n.17 ("A factual jurisdictional proceeding cannot occur until [the] plaintiff's allegations have been

4

controverted.")); *Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendant had not answered [the complaint] and the parties had not engaged in discovery, the [Rule 12(b)(1)] motion to dismiss was facial.")).

A factual attack, on the other hand, is "an argument that there is no jurisdiction because the facts of the case—and [in a factual attack] the [court] may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction." *Constitution Party of Pa.*, 757 F.3d at 358. "So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, *in fact*, diversity is lacking." *Id.* (citing *Mortensen*, 549 F.2d at 891 ("[T]he trial court is free to weigh the evidence[,] . . . and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.")) (emphasis added). In a factual attack, the plaintiff bears the burden of proof that jurisdiction in fact exists, and the court need not presume the truth of the plaintiff's allegations. *Mortensen*, 549 F.2d at 891.

"'In sum, a facial attack 'contests the sufficiency of the pleadings,' [*In re Schering Plough*], 678 F.3d at 243, 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party of Pa.*, 757 F.3d at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

**B. Defendant presents a "facial" attack to jurisdiction in this case.**

In this case, defendant did not answer plaintiff's complaint or otherwise present competing facts (through, for example, affidavits, depositions, or other evidence) to challenge the court's subject-matter jurisdiction over plaintiff's claims. Instead, defendant argues plaintiff's amended complaint fails to allege facts sufficient to support a justiciable controversy under the DJA and Article III. The exhibits accompanying defendant's motion to dismiss relate solely to her arguments under Rules 12(b)(7) and 19, *i.e.*, that the court must join necessary parties in this action. *See* (ECF No. 57.) Those contentions do not relate to the court's subject-matter jurisdiction over plaintiff's claims in this case. Consequently, defendant's Rule 12(b)(1) motion to dismiss presents a facial challenge to jurisdiction. *Cf. Constitution Party of Pa.*, 757 F.3d at 358 ("A factual attack requires a *factual* dispute, and there is none here." (emphasis added)).

Because defendant challenges jurisdiction on its face in this case, the court draws the factual background from plaintiff's amended complaint, (ECF No. 54). The court accepts plaintiff's well-pleaded factual allegations as true and construes them in its favor. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

## IV. ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT

Plaintiff is a California corporation with its principal place of business in Los Angeles, California. (ECF No. 54 ¶ 3.) Plaintiff's president is Don Murphy

("Murphy"), a motion picture producer whose production credits include "Natural Born Killers," "The League of Extraordinary Gentlemen," "From Hell," and the "Transformers" franchise. (*Id.*) "Motion pictures on which [Murphy] has acted as a producer have generated in excess of [$4 billion] in box office revenues." (*Id.*)

Defendant resides in New Castle, Pennsylvania. (*Id.* ¶ 4.) Defendant is trustee of the Trust. (*Id.*) Defendant is "actively engaged in offering to license and licensing . . . rights in and to the character of 'Buck Rogers,'" who "first appeared" in *Armageddon* in 1928 as "Anthony Rogers." (*Id.*)

Philip Francis Nowlan ("Nowlan") was a science-fiction writer "best known for creating the character of 'Buck Rogers.'" (*Id.* ¶ 7.) Buck Rogers "first appeared" in *Armageddon* as "'Anthony Rogers'" in the magazine "'Amazing Stories' (Volume 3, No. 5, August 1928)."[1] (*Id.*) Nowlan died in 1940. (*Id.*) Under copyright law, *Armageddon* "entered the public domain in the United States in or about 1956 and [worldwide] in or about 2010." (*Id.* ¶¶ 8, 12.)

Plaintiff is "currently developing a motion picture project based upon" *Armageddon* "including the character of 'Anthony Rogers' aka 'Buck Rogers' first appearing therein." (*Id.* ¶ 9.) "In connection with its development of the motion picture project," plaintiff is "involved in the creation of a screenplay adaptation" of *Armageddon*, "which necessarily includes utilization and portrayal of the character

---

[1] Defendant correctly points out that only "Anthony Rogers" appears in *Armageddon*. The story does not mention "Buck Rogers." *See* (ECF No. 54-1.)

'Buck Rogers.'" (*Id.*) "One of the screenwriters" of plaintiff's adaptation "happens to be" Robert Nichols Flint Dille ("Dille"), "one of two" beneficiaries of the Trust. (*Id.*) Plaintiff has "preliminarily obtained firm interest from two major motion picture studios, Warner Brothers and Sony, to fund the production of a major motion picture based on the project" with a budget "equal to or in excess of [$100 million], neither of which can presently be pursued until the declaratory relief sought herein can be obtained." (*Id.*)

Plaintiff "publicly announced its development of the motion picture project based upon" *Armageddon* at "Comic-Con in San Diego, California in July 2015." (*Id.* ¶ 10.) Plaintiff's "development of the motion picture project is well underway," and plaintiff "has engaged substantial in preparations [*sic*] for production." (*Id.* ¶ 11.) Plaintiff "retained the services" of Susan Montford ("Montford") and Murphy "as producers on the project" and "screenwriters" Dille and Ed Neumaier ("Neumaier") to "write the screenplay adaptation currently underway based on an already completed written treatment thereof." (*Id.*) Plaintiff "hired a visual effects supervisor to start pre-visualization on the project in California, *inter alia*." (*Id.*)

"In response to [plaintiff's] public announcement regarding its motion picture project" and to a "Deadline Hollywood article to the same effect appearing on July 10, 2015," Dille received a voicemail in California from the Trust's

counsel "threatening to sue" plaintiff, Murphy, and "its affiliates in connection with the [*Armageddon*] project in 'every court in the land.'" (*Id.* ¶ 14.) The Trust's counsel "informed [Dille] that he was [at] Comic-Con but would be leaving the convention early 'to sue them.'" (*Id.*)

"At or about such time," the Trust's counsel and its "licensing representative" Jane MacGregor ("MacGregor") called plaintiff in California "emphatically instructing [plaintiff] and its affiliates to cease and desist from developing the motion picture project based upon [*Armageddon*]" and "making similar threats to sue if such demands were not complied with." (*Id.* ¶ 15.) MacGregor is the "licensing agent" for the Trust "responsible for negotiating all film and television deals on its behalf, including deals for character licensing. . . ." (*Id.*) During this call, the Trust's counsel asserted that the Trust "had not given [plaintiff] or anyone affiliated with it permission to license or use any elements under the 'Buck Rogers Universe,' including [Dille], and that "the copyright in [*Armageddon*] was owned by [the Trust]." (*Id.* ¶ 16.) The Trust's counsel "concluded this call by indicating that unless the demand to 'cease and desist' was complied with, immediate legal action seeking injunctive relief under copyright and trademark would be initiated against [plaintiff], its president [Murphy], and their affiliates, including [Dille]." (*Id.*)

"On or about July 28, 2015," Dille's counsel received a letter in California signed by defendant on behalf of the Trust. (*Id.* ¶ 18.) In the letter, defendant asserted that the Trust "had not given permission or license for the use of 'Buck Rogers' or any of the elements of the Buck Rogers Universe to [Dille] or [plaintiff]." (*Id.*) "The letter also accused [Dille] of acting to damage the interests of the [Trust] and the interests of his co-beneficiaries, asserting that he may be liable to the Trust and other beneficiaries for any damages caused, and threatening to proceed with legal action if a satisfactory response was not received within ten days." (*Id.*)

"[L]etters were also sent" by the Trust's counsel to Murphy "in August 2015 reiterating the above cease and desist demands and threatening imminent litigation against [plaintiff] and its affiliates if such demands were not complied with." (*Id.* ¶ 19.)

The Trust "may have or has since commenced litigation" against Dille, "filing a 'Writ of Summons' dated August 31, 2015 against him on an unspecified claim in a Pennsylvania Court and reflecting that [Geer] is the attorney on behalf of the plaintiff." (*Id.* ¶ 20.) "The action is entitled *The Dille Family Trust, Louise Geer Trustee v. Robert Nichols Flint Dille Beneficiary*, Commonwealth of Pennsylvania, County of Lawrence, File No. 2015-10848" (the "Lawrence County case"). (*Id.*)

"Such efforts" by defendant "to intentionally interfere with the lawful motion picture development by [p]laintiff have rendered much further development, financing, and production thereof unreasonably difficult if not unfeasible at this time under such cloud of title." (*Id.* ¶ 21.) "[A]s a practical matter[,] there is obviously little if any commercial interest by third parties such as Warner Brothers or Sony in financing, acquiring, licensing[,] or distributing a motion picture (project) embroiled in a chain of title dispute." (*Id.* ¶ 28.) "By virtue of the cloud that now hangs over this motion picture project, exploitation proves virtually impossible, as virtually any commercial distribution of any motion picture requires securing of errors and omissions insurance," and "[d]efendant and [her] counsel are well aware that insurers may well refuse to issue a policy in the first place under these circumstances." (*Id.*) "Alternatively, that [*sic*] they would only do so subject to such exclusions that distributors would find unacceptable." (*Id.*)

Defendant "asserts exclusive ownership rights under [c]opyright to the character of 'Anthony Rogers' aka 'Buck Rogers' originally created by [Nowlan] in [*Armageddon*]." (*Id.* ¶ 22.) "[A]lthough [p]laintiff lacks personal knowledge," plaintiff "assumes and does not deny that [defendant] is the sole owner of the [Nowlans'] rights in [*Armageddon*], but only to the extent that any such rights are valid and existing." (*Id.*) Defendant "asserts sole and exclusive ownership under [c]opyright as to all enumerated rights under 17 U.S.C. [§] 106 regarding the use of

the 'Anthony Rogers' aka 'Buck Rogers' [c]haracter originally created by [Nowlan] in [*Armageddon*]." (*Id.* ¶ 23.) "Such assertion of exclusive ownership over a work that has entered the public domain is wrongful and improper as a work in the public domain cannot be infringed." (*Id.*)

"An actual controversy of a justiciable nature currently exists" between plaintiff and defendant "as to whether the development of a motion picture project based upon [*Armageddon*] including the character of 'Anthony Rogers' aka 'Buck Rogers' first appearing therein, infringes the rights asserted by [defendant]." (*Id.* ¶ 25.) "Specifically, in connection with [plaintiff's] development of the motion picture project, the creation of a screenplay adaptation of [*Armageddon*] necessarily includes utilization and portrayal of the character 'Buck Rogers.'" (*Id.*) Plaintiff's "development of the motion picture project is well underway," and "it has engaged in substantial development efforts and preparations for production of this motion picture project such that but for a finding that the motion picture project infringes or for extraordinary and unforeseen contingencies, further production efforts could be undertaken in short order." (*Id.* ¶ 26.)

Plaintiff seeks a declaratory judgment from the court that:

- "copyright having expired in the United States and the world as to [*Armageddon*], . . . any member of the public, including [p]laintiff, has the right in the United States to copy the expression embodied in this public domain work";

- "copyright having expired in the United States and the world as to [*Armageddon*], . . . and as to the 'Anthony Rogers' aka 'Buck Rogers' character originating therein, any member of the public, including [p]laintiff, has the right in the United States to copy the expression embodied in this public domain work, and to create and exploit derivative works incorporating any and all of the 'Anthony Rogers' aka 'Buck Rogers' character without infringing any right of [defendant] under copyright"; and

- copyright having expired in the United States as to [*Armageddon*], . . . any member of the public, including [p]laintiff, has the right in the United States to copy the expression embodied in this public domain work, and to create and exploit derivative works incorporating any and all of the 'Anthony Rogers' aka 'Buck Rogers' character without infringing any right of [defendant] under the Lanham Act."

(*Id.* at 11–12.) In addition, plaintiff requests that

> [defendant] be enjoined from directly or indirectly asserting rights under [c]opyright in and to [*Armageddon*] and/or the "Anthony Rogers" aka "Buck Rogers" story elements originating therein, or assisting in any such activity, and from interfering with the exploitation of the "Anthony Rogers" aka "Buck Rogers" character and story elements by [p]laintiff.

(*Id.* at 12–13.) Finally, plaintiff seeks costs and attorney's fees under 17 U.S.C. § 505. (*Id.* at 13.)

## V. DISCUSSION

### A. The DJA's "actual controversy" requirement

In relevant part, the DJA provides that

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

13

28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the [DJA] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937)).

Before the United States Supreme Court decided *MedImmune*, courts applied a two-part test to determine whether a justiciable controversy existed for a declaration of noninfringement of intellectual property rights. *See Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007) (citing pre-*MedImmune* decisions).[2] Under this test, courts sought to determine whether:

(1)  the declaratory-judgment plaintiff actually produced or was prepared to produce an allegedly infringing product; and

(2)  the declaratory-judgment defendant's conduct created in the declaratory-judgment plaintiff a "reasonable apprehension" that the defendant would file suit if the alleged infringing activity continued. *Id.*

In *MedImmune*, the United States Supreme Court rejected the "reasonable apprehension of suit" requirement of this test. 549 U.S. at 132 n.11 ("The

---

[2] The United States Court of Appeals for the Federal Circuit applied this test to patent disputes. But in the intellectual property realm, the "same principles that control patent cases" apply "if a declaratory judgment is sought about a copyright" under the DJA. 10B CHARLES WRIGHT *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2761 (3d ed. 2015) (citing decisions); *see, e.g.*, *Young v. Vannerson*, 612 F. Supp. 2d 829, 839 (S.D. Tex. 2009) ("The [United States Court of Appeals for the] Fifth Circuit adopted this [two-part test] and extended it to all types of intellectual property disputes. . . ." (citing *Texas v. W. Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989)).

reasonable-apprehension-of-suit test . . . conflicts with our decisions. . . ."); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("*MedImmune* represents a rejection of [the] reasonable apprehension of suit test."); *Boston Sci. Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 652 n.7 (D. Del. 2008) (acknowledging *MedImmune*'s rejection of the "reasonable apprehension of suit" test).

In *MedImmune*, the Court reaffirmed the totality-of-the-circumstances approach and held that a controversy is justiciable under Article III and the DJA if it is "'definite and concrete, touching the legal relations of parties having adverse legal interests.'" 549 U.S. at 127 (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240–41). It must also be "'real and substantial[,]' . . . admit[ting] of specific relief through a decree of a conclusive character." *Id.* (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240–41). In sum, the "'question in each case'" after *MedImmune* is "'whether the facts alleged, under *all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient *immediacy* and *reality* to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added)). The court cannot issue "'an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240–41).

After *MedImmune*, whether there has been potentially infringing activity or meaningful preparation to conduct potentially infringing activity "'remains an important element in the totality of circumstances [that] must be considered in determining whether a declaratory judgment is appropriate'" in an intellectual property dispute. *See Prasco, L.L.C. v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) (quoting *Cat Tech L.L.C. v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008)). If a declaratory-judgment plaintiff has not taken "significant, concrete steps to conduct infringing activity," the dispute is neither "'immediate' nor 'real' and the requirements for justiciability have not been met." *Cat Tech L.L.C.*, 528 F.3d at 880 (quoting *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990)).

### B.    <u>Plaintiff fails to present a justiciable controversy in this case.</u>

In this case, the potential copyright-infringing activity is plaintiff's anticipated production and release of a film derived from *Armageddon* and depicting the character "Buck Rogers." To prepare the film, plaintiff "retained the services of" producers Murphy and Montford, screenwriters Dille and Neumaier, and an unidentified "visual effects supervisor." (ECF No. 54 ¶¶ 10–11.) A "screenplay adaptation" is "currently underway." (*Id.* ¶ 11.) That adaptation is "based upon" *Armageddon* and "necessarily includes" character "Buck Rogers."

(*Id.* ¶ 9.) "Pre-visualization" has "start[ed]." (*Id.*) Plaintiff has "preliminar[y,] . . . firm interest" in the project from Warner Brothers and Sony. (*Id.* ¶ 9.)

Even when accepted as true and viewed favorably, these vague allegations fail to demonstrate that plaintiff has taken "significant, concrete steps" toward producing and releasing its film. *Cat Tech L.L.C.*, 528 F.3d at 880. Consequently, this dispute lacks the requisite "'immediacy'" and "'reality'" to warrant the issuance of a declaratory judgment. *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co.*, 312 U.S. at 273).

### 1. Immediacy

First, plaintiff fails to allege facts establishing the immediacy of this dispute, as required by Article III. Generally, the "greater the length of time before potentially infringing activity is expected to occur, 'the more likely the case lacks the requisite immediacy'" under Article III. *Cat Tech L.L.C.*, 528 F.3d at 881 (quoting *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004)); *see Sobini Films v. Tri-Star Pictures Inc.*, No. 01-6615, 2001 WL 1824039, at *7 (C.D. Cal. Nov. 21, 2001) (citing *Lang*, 895 F.2d 761).

In this case, the amended complaint does not contain specific, or even approximate, allegations about when plaintiff could begin film production, let alone release the allegedly infringing film, assuming a declaratory judgment is entered in plaintiff's favor. A dispute "lacks immediacy" where there are no

allegations about "when, if ever," the product will be "used in a manner that could potentially infringe" the intellectual property rights of another. *See Matthews Int'l Corp. v. Biosafe Eng'g, L.L.C.*, 695 F.3d 1322, 1328 (Fed. Cir. 2012). Plaintiff's nebulous allegations that "development of the [film] is *well underway*" and that "further production efforts could be undertaken *in short order*" are conclusory and insufficient to show the immediacy required by Article III. *Cf. id.* at 1329 ("[P]otential future infringement . . . [is not] sufficiently immediate. . . ."). Without allegations about when film production could begin and when the film could be released, the court cannot conclude that plaintiff is "immediately prepared" to engage in copyright-infringing activity, as required under the DJA and Article III. *Sobini Films*, 2001 WL 1824039, at *5; *cf. Matthews Int'l Corp.*, 695 F.3d at 1329 (concluding that without "specific and concrete evidence" about when infringement will occur, "any judicial determination" regarding infringement "would be premature"); *Sierra*, 363 F.3d at 1379 (no immediacy where a prototype of an allegedly infringing product would not operate until more than one year after the complaint was filed); *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527 (Fed. Cir. 1992) (no immediacy where clinical trials of a potentially infringing product began shortly after the complaint was filed and the product was "years away" from being approved by the Food and Drug Administration); *Lang*,

895 F.2d at 764 (no immediacy where the allegedly infringing product "would not be finished until at least [nine] months after the complaint was filed").

## 2.     __Reality__

Second, plaintiff fails to allege facts establishing the reality of this dispute, as required by Article III. A dispute is not sufficiently real if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985). The dispute must not be "nebulous or contingent" but must have taken on a "fixed and final shape" so the court can "see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952).

At this early stage, the production and release of plaintiff's film are "contingent future event[s]" that may not occur "as anticipated" or "indeed may not occur at all." *Thomas*, 473 U.S. at 580–81. As pleaded by plaintiff, the film project is still in an inchoate stage. Plaintiff does not allege it hired or entered into preliminary agreements with the parties "integral to the commencement of production"—let alone the release—of a "major motion picture." *Sobini Films*, 2001 WL 1824039, at *6. Those parties include "key talent" such as, for example, directors, lead actors, cinematographers, and effects supervisors, in addition to the

producers, screenwriters, and visualization supervisor pleaded by plaintiff. *See id.* at *5.

While plaintiff hired screenwriters and a "screenplay adaptation" of *Armageddon* is "currently underway," plaintiff does not allege a screenplay has actually been written, finalized, or approved for filming. Plaintiff's screenplay and film are "subject to many changes before completion" (assuming they are ever completed), and it is possible the "final product" will not infringe defendant's alleged copyrights in *Armageddon* and the character "Buck Rogers." *See id.* at *7. The court "simply [cannot] determine at this [nascent] stage" whether plaintiff's film, "if completed, would infringe" on existing copyrights owned by defendant. If the court granted plaintiff a declaratory judgment at this early stage, "it would simply be rendering an advisory opinion based solely upon [plaintiff's] assertion" that no matter what changes the film project undergoes in the future, the finished product will infringe copyrighted material from *Armageddon* and the "Buck Rogers" character. *Id.* Plaintiff's allegations are insufficient to establish the "reality" of this dispute, as required by Article III. *Cf. Sierra*, 363 F.3d at 1379 ("The greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject—in short, detached from eventual reality."); *Int'l Harvester*

*Co. v. Deere & Co.*, 623 F.2d 1207, 1216 (7th Cir. 1980) ("Our concern is not that the [product in question] will never be produced, but rather that because of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed.").

Plaintiff received "*preliminar*[*y*,] . . . firm *interest*" in the project from Warner Brothers and Sony. Without allegations of actual commitment or intent to commit—through, for example, letters of intent—plaintiff's vague, equivocal assertions fail to demonstrate the reality of this dispute. Plaintiff does not allege it entered into finalized, or even preliminary, financing, acquisition, licensing, or distribution agreements with these companies in connection with its potential film. Indeed, finalized agreements of this nature may never materialize:

> "[M]otion picture production companies, agents[,] and others in the entertainment industry receive vast numbers of stories, treatments, screenplays[,] and so forth for consideration for development. Out of a tremendous volume of materials, *a relatively few projects are selected for development* and *even fewer are ultimately produced*."

*Spinello v. Amblin Entm't*, 34 Cal. Rptr. 2d 695, 700 (Cal. Ct. App. 1994) (quoting J. KENOFF & R. ROSENBERG, ENTERTAINMENT INDUSTRY CONTRACTS: NEGOTIATING AND DRAFTING GUIDE § 2.02 (1994) (emphasis added)); *see Sobini Films*, 2001 WL 1824039, at *7 (noting that in the film industry, "most proposed film projects are never actually produced"). Industry practice suggests plaintiff's "proposed 'project'" may "never be completed." *Sobini Films*, 2001 WL 1824039,

at *7. Without concrete allegations demonstrating that plaintiff is capable of actually producing and releasing its film, the amended complaint fails to establish a real controversy under the DJA and Article III. *See id.* at *5–8.

Plaintiff alleges it will be difficult and financially risky to proceed further with its film project because financiers, distributors, and insurers are less likely to involve themselves in a production over which the specter of copyright litigation looms. The court is mindful of plaintiff's concerns. Article III, however, requires an immediate and real dispute, notwithstanding the risk or cost a party must bear. *See id.* at *4 ("While a subsequent finding of infringement might render [the] plaintiff's activity fruitless, that risk must be taken as a prerequisite to seeking judicial relief [under the DJA]"); *id.* ("[T]he availability of declaratory relief in intellectual property actions often enables a potential infringer to avoid economically wasteful activity, [but] this remedy does not allow [it] to avoid *all* potentially wasteful activity." (emphasis in original)). Plaintiff does not point to, and the court is unaware of, any decisions indicating otherwise.

Finally, plaintiff alleges defendant's repeated threats of litigation create an actual controversy under Article III and DJA. After *MedImmune*, however, "threats of legal action, alone, cannot create an actual controversy under the [DJA]." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 751 (5th Cir. 2009). Plaintiff

"must still demonstrate that the controversy was sufficiently immediate and real." *Id.* For reasons already explained, plaintiff fails to do so.[3]

At this nascent stage in creating its film, plaintiff seeks an opinion from the court "'advising what the law would be upon a hypothetical [set] of facts'" in which it is immediately prepared to produce and release its "Buck Rogers" film. *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240–41). Plaintiff fails to allege facts to show it is immediately prepared to produce and release such a film. The amended complaint inches this dispute closer to the threshold set by Article III—but plaintiff fails to show "significant, concrete steps" toward producing and releasing its film, as required under the DJA and Article III. Under those circumstances, the court will grant defendant's Rule 12(b)(1) motion and dismiss plaintiff's amended complaint without prejudice.

---

[3] Plaintiff alleges defendant filed the Lawrence County suit against Dille by way of a "Writ of Summons." An action may be commenced in a Pennsylvania court by filing a *praecipe* for a writ of summons *or* a complaint. PA. R. CIV. P. 401, 1007. Plaintiff does not allege a complaint has been filed against Dille in the Lawrence County suit. Without a complaint, this court cannot determine whether the Lawrence County suit is relevant to this suit. If no complaint has been filed in the state suit, Dille may move the state court to issue a rule to show cause why a complaint should be filed. In other words, the burden is on plaintiff in this case to show that the Lawrence County case is relevant to *this* case, and procedural mechanisms exist under Pennsylvania law for it to attempt do so. At this stage, plaintiff fails to show that the Lawrence County suit is relevant to this suit for purposes of the DJA and Article III.

## VI.   CONCLUSION

For the reasons set forth in this opinion, the court will grant defendant's Rule 12(b)(1) motion to dismiss. Plaintiff's complaint will be dismissed in its entirety without prejudice to its amendment. Plaintiff may file an amended complaint within sixty days of the issuance of this opinion and order.

Defendant's request to join necessary parties under Rules 12(b)(7) and 19 and plaintiff's evidentiary objections to the exhibits accompanying defendant's motion will be denied because they are moot.

An appropriate order follows.

**DATED**:        March 21, 2016

**/s/ JOY FLOWERS CONTI**
Joy Flowers Conti
Chief United States District Judge
