# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TEAM ANGRY FILMWORKS, INC.,          )
*a California company*,               )
      Plaintiff,         )
               )
      v.                 )      Civ. No.  15-1381
               )
LOUISE A. GEER, *as Trustee of the*  )
*Dille Family Trust*,                )
      Defendant.         )

## OPINION

CONTI, Chief District Judge

## I.    INTRODUCTION

In its second amended complaint, California film-production company Team Angry Filmworks, Inc. ("plaintiff") calls upon the court to declare that Philip Francis Nowlan's 1928 science-fiction novella *Armageddon–2419 A.D.* ("*Armageddon*") and character "Buck Rogers" entered the public domain, pursuant to the Declaratory Judgment Act (the "DJA"), 28 U.S.C. § 2201(a). As trustee of the Dille Family Trust (the "Trust"), defendant Louise A. Geer ("defendant") filed a motion:

- to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) for failure to present a justiciable controversy under the DJA and Article III of the Constitution; or

- in the alternative, to join necessary parties under Federal Rules of Civil Procedure 12(b)(7) and 19. (ECF No. 64.)

Having been fully briefed, defendant's motion is ripe for disposition. For the reasons explained in this opinion, plaintiff fails to allege facts sufficient to establish a justiciable controversy under the DJA and Article III, particularly with respect to the immediacy of plaintiff's allegedly infringing activity. Accordingly, the court will grant defendant's Rule 12(b)(1) motion to dismiss plaintiff's complaint without prejudice.

## II.   PROCEDURAL HISTORY

On August 8, 2015, plaintiff filed a complaint against defendant in the United States District Court for the Central District of California. (ECF No. 1.) On September 15, 2015, defendant filed a motion in the California district court to dismiss the action for want of personal jurisdiction and Article III standing. (ECF No. 15.) On October 23, 2015, the California district court found venue proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b)(1) and transferred the action to this court under 28 U.S.C. §§ 1404(a) and 1406(a). (ECF No. 27 at 2.)

On November 6, 2015, defendant renewed her Rule 12(b)(1) motion to dismiss plaintiff's complaint in this court. (ECF Nos. 43, 44.) On November 25, 2015, plaintiff filed a brief in opposition to defendant's renewed Rule 12(b)(1) motion to dismiss. (ECF No. 47.) On January 7, 2016, the court held a hearing on defendant's renewed Rule 12(b)(1) motion to dismiss. (Text Minute Entry, 1/7/2016.) Because plaintiff's complaint failed to allege a justiciable controversy under the DJA and Article III, the court granted defendant's Rule 12(b)(1) motion to dismiss without prejudice. (ECF No. 53.)

On January 29, 2016, plaintiff filed an amended complaint. (ECF No. 54.) On February 19, 2016, defendant filed a motion to dismiss plaintiff's amended complaint, with accompanying exhibits, under Rules 12(b)(1) and 12(b)(7) and a motion for joinder of necessary parties or dismissal for lack of indispensable parties under Rules 12(b)(7) and 19. (ECF Nos. 55, 56, 57.) On March 11, 2016, plaintiff filed a response in opposition to defendant's motion and objections to defendant's exhibits. (ECF Nos. 58, 59.) On March 21, 2016 this court issued an opinion and order granting defendant's Rule 12(b)(1) motion to dismiss without prejudice. *Team Angry Filmworks, Inc. v. Geer*, Civ. Action No. 15-1381, 2016 WL 1086370 (W.D. Pa. Mar. 21, 2016).

On May 20, 2016, plaintiff filed a second amended complaint. (ECF No. 64.) On June 2, 2016, defendant filed a motion to dismiss plaintiff's second amended complaint, with accompanying exhibits, under Rules 12(b)(1) and 12(b)(7) and a motion for joinder of necessary parties or dismissal for lack of indispensable parties under Rules 12(b)(7) and 19. (ECF Nos. 65, 66, 67.) On June 22, 2016, plaintiff filed a response in opposition to defendant's motion and objections to defendant's exhibits. (ECF Nos. 68, 69.) On October 5, 2016 the court heard arguments on the motion. Having been fully briefed and argued, defendant's Rule 12(b)(1) motion to dismiss is ripe for disposition.

### III.  ALLEGATIONS IN PLAINTIFF'S SECOND AMENDED COMPLAINT

As alleged in plaintiff's second amended complaint, plaintiff is a California corporation with its principal place of business in Los Angeles, California. (ECF No. 64 ¶ 3.) Plaintiff's president is Don Murphy ("Murphy"), a motion picture producer whose

production credits include "Natural Born Killers," "The League of Extraordinary Gentlemen," "From Hell," and the "Transformers" franchise. (*Id.*) "Motion pictures on which [Murphy] has acted as a producer have generated in excess of [$4 billion] in box office revenues." (*Id.*)

Defendant resides in New Castle, Pennsylvania. (*Id.* ¶ 4.) Defendant is trustee of the Trust. (*Id.*) Defendant is "actively engaged in offering to license and licensing . . . rights in and to the character of 'Buck Rogers,'" who "first appeared" in *Armageddon* in 1928 as "Anthony Rogers." (*Id.*)

Philip Francis Nowlan ("Nowlan") was a science-fiction writer "best known for creating the character of 'Buck Rogers.'" (*Id.* ¶ 7.) Buck Rogers "first appeared" in *Armageddon* as "'Anthony Rogers'" in the magazine "'Amazing Stories' (Volume 3, No. 5, August 1928)."[1] (*Id.*) Nowlan died in 1940. (*Id.*) Plaintiff alleges that under copyright law, *Armageddon* "entered the public domain in the United States in or about 1956 and [worldwide] in or about 2010." (*Id.* ¶¶ 8, 12.)

Plaintiff is "currently developing a motion picture project based upon" *Armageddon* "including the character of 'Anthony Rogers' aka 'Buck Rogers' first appearing therein." (*Id.* ¶ 9.) "In connection with its development of the motion picture project," plaintiff is "involved in the creation of a screenplay adaptation" of *Armageddon*, "which necessarily includes utilization and portrayal of the character 'Buck Rogers.'" (*Id.*) Plaintiff's "development of the motion picture project is well underway," and

---

[1] Defendant correctly points out that only "Anthony Rogers" appears in *Armageddon*. The story does not mention "Buck Rogers." *See* (ECF No. 54-1.)

plaintiff "has taken significant, concrete steps toward producing and releasing its film." (*Id.* ¶ 10.)

Plaintiff has "retained the services" and has a "fully executed writer agreement" with Flint Dille and Ed Neumeier to write the screenplay for the film based on an already completed written treatment thereof, which plaintiff has submitted for registration with the U.S. Copyright Office. (*Id.* ¶ 10.) "One of the screenwriters" of plaintiff's adaptation "happens to be" Robert Nichols Flint Dille ("Dille"), "one of two" beneficiaries of the Trust. (*Id.* ¶ 9.) Plaintiff has "retained the services of" and has a "fully executed producer agreement" with Susan Montford and Don Murphy as producers on the project. Plaintiff has "retained the services of" and has a "fully executed visual effects agreement" with Edward Irastorza as visual effects supervisor to start pre-visualization on the project. (*Id.* ¶ 10.)

Plaintiff has "preliminarily obtained firm interest from three major motion picture studios, Warner Brothers, Sony, and Legendary Pictures to fund the production of a major motion picture based on the project" with a budget "equal to or in excess of [$100 million], none of which can presently be pursued until the declaratory relief sought herein can be obtained." (*Id.*) Plaintiff has attached "correspondence from Warner Bros.' Senior Vice President Jon Berg [and] Sony's then-President of Production Michael Deluca . . . expressing firm interest in the motion picture project." (*Id.*) Plaintiff has attached correspondence from Legendary Pictures' Executive Vice President Cale Boyer expressing firm interest in the motion picture project "but declining to move forward with

the project due to the litigation threats and claims of ownership by The Dille Family Trust." (*Id.*)

Plaintiff "publicly announced its development of the motion picture project based upon" *Armageddon* at "Comic-Con in San Diego, California in July 2015." (*Id.* ¶ 11.) According to the second amended complaint, "[s]ince [plaintiff's] public announcement regarding its motion picture project and appearance of a Deadline Hollywood article to the same effect in June 2015" Dille received a voicemail in California from the Trust's counsel "threatening to sue" plaintiff, Murphy, and "its affiliates in connection with the [*Armageddon*] project in 'every court in the land.'" (*Id.* ¶ 15.) The Trust's counsel "informed [Dille] that he was [at] Comic-Con but would be leaving the convention early 'to sue them.'" (*Id.* ¶ 14–15.)

"At or about such time," the Trust's counsel and its "licensing representative" Jane MacGregor ("MacGregor") called plaintiff in California "emphatically instructing [plaintiff] and its affiliates to cease and desist from developing the motion picture project based upon [*Armageddon*]" and "making similar threats to sue if such demands were not complied with." (*Id.* ¶ 16.) MacGregor is the "licensing agent" for the Trust "responsible for negotiating all film and television deals on its behalf, including deals for character licensing. . . ." (*Id.*) During this call, the Trust's counsel asserted that the Trust "had not given [plaintiff] or anyone affiliated with it permission to license or use any elements under the 'Buck Rogers Universe,' including [Dille], and that "the copyright in [*Armageddon*] was owned by [the Trust]." (*Id.* ¶ 17.) The Trust's counsel "concluded this call by indicating that unless the demand to 'cease and desist' was complied with,

immediate legal action seeking injunctive relief under copyright and trademark would be initiated against [plaintiff], its president [Murphy], and their affiliates, including [Dille]." (*Id.*)

"On or about July 28, 2015," Dille's counsel received a letter in California signed by defendant on behalf of the Trust. (*Id.* ¶ 19.) In the letter, defendant asserted that the Trust "had not given permission or license for the use of 'Buck Rogers' or any of the elements of the Buck Rogers Universe to [Dille] or [plaintiff]." (*Id.*) "The letter also accused [Dille] of acting to damage the interests of the [Trust] and the interests of his co-beneficiaries, asserting that he may be liable to the Trust and other beneficiaries for any damages caused, and threatening to proceed with legal action if a satisfactory response was not received within ten days." (*Id.*) "[L]etters were also sent" by the Trust's counsel to Murphy "in August 2015 reiterating the above cease and desist demands and threatening imminent litigation against [plaintiff] and its affiliates if such demands were not complied with." (*Id.* ¶ 20.)

Plaintiff alleged "[s]uch efforts" by defendant "to intentionally interfere with the lawful motion picture development by [p]laintiff have rendered much further development, financing, and production thereof unreasonably difficult if not unfeasible at this time under such cloud of title." (*Id.* ¶ 22.) "[A]s a practical matter[,] there is obviously little if any commercial interest by third parties such as Warner Brothers, Sony, or Legendary Pictures in financing, acquiring, licensing[,] or distributing a motion picture (project) embroiled in a chain of title dispute." (*Id.* ¶ 23.) "By virtue of the cloud that now hangs over this motion picture project, exploitation proves virtually impossible, as

virtually any commercial distribution of any motion picture requires securing of errors and omissions insurance," and "[d]efendant and [her] counsel are well aware that insurers may well refuse to issue a policy in the first place under these circumstances." (*Id.*) "Alternatively, that [*sic*] they would only do so subject to such exclusions that distributors would find unacceptable." (*Id.*)

Plaintiff further alleges "[t]here is a generally understood principal in the motion picture industry that as long as a claimant asserts that a public domain work is still under copyright, even if lacking a factual basis or a good faith belief in making such assertion, no reputable producer can realistically proceed with actual full scale production." (*Id.* ¶ 24.) Plaintiff attaches letters to that effect from "former Fox CEO and chairman William M. Mechanic, and successful producer and founder and emeritus president of the Producers Guild of America Mark Gordon. (*Id.* ¶ 24–26.)

Defendant "asserts exclusive ownership rights under [c]opyright to the character of 'Anthony Rogers' aka 'Buck Rogers' originally created by [Nowlan] in [*Armageddon*]." (*Id.* ¶ 27.) "[A]lthough plaintiff lacks personal knowledge," plaintiff "assumes and does not deny that [defendant] is the sole owner of [Nowlan's] rights in [*Armageddon*], but only to the extent that any such rights are valid and existing." (*Id.*) Defendant "asserts sole and exclusive ownership under [c]opyright as to all enumerated rights under 17 U.S.C. [§] 106 regarding the use of the 'Anthony Rogers' aka 'Buck Rogers' [c]haracter originally created by [Nowlan] in [*Armageddon*]." (*Id.* ¶ 28.) "Such assertion of exclusive ownership over a work that has entered the public domain is wrongful and improper as a work in the public domain cannot be infringed." (*Id.*)

Plaintiff claims that "[a]n actual controversy of a justiciable nature currently exists . . . as to whether the development of a motion picture project based upon [*Armageddon*] including the character of 'Anthony Rogers' aka 'Buck Rogers' first appearing therein, infringes the rights asserted by [defendant]." (*Id.* ¶ 30.) "Specifically, in connection with [plaintiff's] development of the motion picture project, the creation of a screenplay adaptation of [*Armageddon*] necessarily includes utilization and portrayal of the character 'Buck Rogers.'" (*Id.*) Plaintiff's "development of the motion picture project is well underway and it has taken significant, concrete steps toward producing and releasing its film." (*Id.* ¶ 31.)

Plaintiff seeks a declaratory judgment from the court that:

- "copyright having expired in the United States and the world as to [*Armageddon*], . . . any member of the public, including [p]laintiff, has the right in the United States to copy the expression embodied in this public domain work";

- "copyright having expired in the United States and the world as to [*Armageddon*], . . . and as to the 'Anthony Rogers' aka 'Buck Rogers' character originating therein, any member of the public, including [p]laintiff, has the right in the United States to copy the expression embodied in this public domain work, and to create and exploit derivative works incorporating any and all of the 'Anthony Rogers' aka 'Buck Rogers' character without infringing any right of [defendant] under copyright"; and

- copyright having expired in the United States as to [*Armageddon*], . . . any member of the public, including [p]laintiff, has the right in the United States to copy the expression embodied in this public domain work, and to create and exploit derivative works incorporating any and all of the 'Anthony Rogers' aka 'Buck Rogers' character without infringing any right of [defendant] under the Lanham Act."

(*Id.* at 20–21.) In addition, plaintiff requests that

[defendant] be enjoined from directly or indirectly asserting rights under [c]opyright in and to [*Armageddon*] and/or the "Anthony Rogers" aka "Buck Rogers" story elements originating therein, or assisting in any such activity, and from interfering with the exploitation of the "Anthony Rogers" aka "Buck Rogers" character and story elements by [p]laintiff.

(*Id.* at 21.) Plaintiff seeks costs and attorney's fees under 17 U.S.C. § 505. (*Id.* at 22.)


## IV.   DEFENDANT'S MOTION TO DISMISS

### A.   RULE 12(b)(1) STANDARD

A motion to dismiss challenging the "actual controversy" requirement under the DJA and Article III is properly brought under Rule 12(b)(1) because "'standing is a jurisdictional matter.'" *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *Ballentine*, 486 F.3d at 810). In deciding a Rule 12(b)(1) motion to dismiss, the court must first determine whether the motion presents a "'facial' attack" or a "'factual' attack" on the claim in issue because that distinction determines "how the pleading must be reviewed." *Id.* at 357–58 (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the [subject-matter] jurisdiction of the court" because "some . . . jurisdictional defect," *e.g.*, failure to present a justiciable controversy, "is present." *Constitution Party of Pa.*, 757 F.3d at 358. In reviewing a facial attack, the court "'must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.'" *Id.* (quoting *In re Schering*

*Plough*, 678 F.3d at 243). In other words, a facial attack calls for the court to apply the "same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.* If the defendant challenges jurisdiction in its Rule 12(b)(1) motion before answering the complaint or "otherwise present[ing] competing facts," the Rule 12(b)(1) motion is, "by definition, a facial attack." *Id.* (citing *Mortensen*, 549 F.2d at 892 n.17 ("A factual jurisdictional proceeding cannot occur until [the] plaintiff's allegations have been controverted.")); *Askew v. Church of the Lord Jesus Christ*, 684 F.3d 413, 417 (3d Cir. 2012) ("As the defendant had not answered [the complaint] and the parties had not engaged in discovery, the [Rule 12(b)(1)] motion to dismiss was facial.")).

A factual attack, on the other hand, is "an argument that there is no jurisdiction because the facts of the case—and [in a factual attack] the [court] may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction." *Constitution Party of Pa.*, 757 F.3d at 358. "So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, *in fact*, diversity is lacking." *Id.* (citing *Mortensen*, 549 F.2d at 891 ("[T]he trial court is free to weigh the evidence[,] . . . and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.")) (emphasis added). In a factual attack, the plaintiff bears the burden of proof that jurisdiction in fact exists, and the court need not presume the truth of the plaintiff's allegations. *Mortensen*, 549 F.2d at 891.

"'In sum, a facial attack 'contests the sufficiency of the pleadings,' [*In re Schering Plough*], 678 F.3d at 243, 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party of Pa.*, 757 F.3d at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)).

In this case, defendant did not answer plaintiff's complaint or otherwise present competing facts (through, for example, affidavits, depositions, or other evidence) to challenge the court's subject-matter jurisdiction over plaintiff's claims. Instead, defendant argues plaintiff's amended complaint fails to allege facts sufficient to support a justiciable controversy under the DJA and Article III. The exhibits accompanying defendant's motion to dismiss relate solely to her arguments under Rules 12(b)(7) and 19, *i.e.*, that the court must join necessary parties in this action. *See* (ECF No. 67.) Those contentions do not relate to the court's subject-matter jurisdiction over plaintiff's claims in this case. Consequently, defendant's Rule 12(b)(1) motion to dismiss presents a facial challenge to jurisdiction. *Cf. Constitution Party of Pa.*, 757 F.3d at 358 ("A factual attack requires a *factual* dispute, and there is none here." (emphasis added)).

Because defendant challenges jurisdiction on its face in this case, the court draws the factual background from plaintiff's second amended complaint. (ECF No. 64.) The court accepts plaintiff's well-pleaded factual allegations as true and construes them in plaintiff's favor. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

## B. BURDEN OF PROOF

Plaintiff claims that the burden of proving jurisdiction in this matter lies with the defendant. Accordingly, plaintiff contends that it does not have the burden of proving that an actual case or controversy exists in the instant action, but rather that defendant has the burden of proving that a case or controversy does *not* exist. Plaintiff bases this claim on the United States Supreme Court's decision in *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014). Plaintiff claims that *Medtronic* shifted the burden of proving jurisdiction to defendants in declaratory judgment cases where the owner of the disputed intellectual property is "nominally the defendant." (ECF No. 68 at 7–8.) Plaintiff argues that this matter involves such a "nominal defendant," and that under *Medtronic*, the burden of proof with respect to jurisdiction, therefore, rests with defendant.

The Court's decision in *Medtronic*, however, speaks only to the burden of proving *infringement*, not to the burden of proving *jurisdiction. Medtronic,* 134 S. Ct. at 846 ("We hold that, when a licensee seeks a declaratory judgment against a patentee to establish that there is no infringement, the burden of proving infringement remains with the patentee."). Contrary to plaintiff's claim, it is well established that the "initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 98 (1993); *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936) (holding that the party seeking exercise of jurisdiction in federal district court must allege facts essential to show jurisdiction and carry the burden of showing he is properly in federal court). The United States Supreme Court has placed this jurisdictional burden on plaintiffs seeking

declaratory judgment. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 140 (2007) ("[i]n the trial court . . . a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy") (quoting *Cardinal Chem.*, 508 U.S. at 95).

Courts within the Third Circuit have consistently found that the party seeking declaratory judgment has the burden of establishing the existence of an actual case or controversy sufficient to support jurisdiction. *See e.g., Frontline Techs., Inc. v. CRS, Inc.*, 833 F. Supp. 2d 480, 484 (E.D. Pa. 2011) ("the party seeking declaratory relief, shoulders the burden of establishing the existence of an actual case or controversy sufficient to support jurisdiction."); *Dey, L.P. v. Sepracor, Inc.*, 595 F. Supp. 2d 355, 359 (D. Del. 2009), *aff'd sub nom. Dey Pharma, LP v. Sunovion Pharm. Inc.*, 677 F.3d 1158 (Fed. Cir. 2012) ("Plaintiffs bear the burden of proving the existence of an actual controversy by a preponderance of the evidence with regard to their declaratory judgment complaint."); *Dodge-Regupol, Inc. v. RB Rubber Prod., Inc.*, 585 F. Supp. 2d 645, 650 (M.D. Pa. 2008) (quoting *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343 (Fed. Cir.2007)) ("[a] party seeking to base jurisdiction on the Declaratory Judgment Act bears the burden of proving that the facts alleged, 'under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"); *Glaxo Grp. Ltd. v. Dr. Reddy's Labs., Ltd.*, 325 F. Supp. 2d 502, 506 (D.N.J. 2004) (quoting *Sierra Applied Sciences, Inc. v. Advanced Energy Indus.*, 363 F.3d 1361, 1373 (Fed.Cir.2004) ("The burden rests on the party requesting declaratory judgment 'to

establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [claim] was filed.'").

Subsequent to the Supreme Court's decision in *Medtronic*, federal courts have continued to place the burden of proving jurisdiction in declaratory judgment actions on the party seeking the declaratory judgment. *See Asia Vital Components Co. v. Asetek Danmark A/S*, Civ. Action No. 2015-1597, 2016 WL 4698960, at *2 (Fed. Cir. Sept. 8, 2016) ("The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed."); *Clarus Therapeutics, Inc. v. Lipocine Inc.*, Civ. Action No. 15-1004, 2016 WL 3519888, at *3 (D. Del. June 27, 2016) ("The burden is on the party claiming declaratory judgment jurisdiction to establish jurisdiction existed when the action was filed and has since continued."); *U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966 (8th Cir. 2015) (finding that although a declaratory judgment plaintiff has the burden of demonstrating that an actual case or controversy exists, that burden does not extend to showing that the declaratory judgment defendant holds meritorious positions on the issues in controversy); *Intel Corp. v. Future Link Sys., LLC*, Civ. Action No. 14-377, 2015 WL 649294, at *4 (D. Del. Feb. 12, 2015) ("The burden is on the party asserting declaratory judgment jurisdiction (here, Plaintiff) to establish that an Article III case or controversy existed at the time that the claim for declaratory relief was filed and that it has continued since.").

Plaintiff's argument that under *Medtronic* defendant now has the burden not only of proving that plaintiff has infringed on defendant's rights, but also of establishing that

no actual case or controversy exists in the instant action is without merit. The burden of establishing jurisdiction lies with plaintiff.

### C. DISCUSSION

In relevant part, the DJA provides that

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the [DJA] refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937)).

Before the United States Supreme Court decided *MedImmune*, courts applied a two-part test to determine whether a justiciable controversy existed for a declaration of noninfringement of intellectual property rights. *See Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007) (citing pre-*MedImmune* decisions).[2] Under this test, courts sought to determine whether:

    (1)   the declaratory-judgment plaintiff actually produced or was prepared to produce an allegedly infringing product; and

---

[2] The United States Court of Appeals for the Federal Circuit applied this test to patent disputes. But in the intellectual property realm, the "same principles that control patent cases" apply "if a declaratory judgment is sought about a copyright" under the DJA. 10B CHARLES WRIGHT *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2761 (3d ed. 2015) (citing decisions); *see, e.g.*, *Young v. Vannerson*, 612 F. Supp. 2d 829, 839 (S.D. Tex. 2009) ("The [United States Court of Appeals for the] Fifth Circuit adopted this [two-part test] and extended it to all types of intellectual property disputes. . . ." (citing *Texas v. W. Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989)).

(2) the declaratory-judgment defendant's conduct created in the declaratory-judgment plaintiff a "reasonable apprehension" that the defendant would file suit if the alleged infringing activity continued. *Id.*

In *MedImmune*, the United States Supreme Court rejected the "reasonable apprehension of suit" requirement of this test. 549 U.S. at 132 n.11 ("The reasonable-apprehension-of-suit test . . . conflicts with our decisions. . . ."); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("*MedImmune* represents a rejection of [the] reasonable apprehension of suit test."); *Boston Sci. Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 652 n.7 (D. Del. 2008) (acknowledging *MedImmune*'s rejection of the "reasonable apprehension of suit" test).

In *MedImmune*, the Court reaffirmed the totality-of-the-circumstances approach and held that a controversy is justiciable under Article III and the DJA if it is "'definite and concrete, touching the legal relations of parties having adverse legal interests.'" 549 U.S. at 127 (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240–41). It must also be "'real and substantial[,]' . . . admit[ting] of specific relief through a decree of a conclusive character." *Id.* (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240–41). In sum, the "'question in each case'" after *MedImmune* is "'whether the facts alleged, under *all the circumstances*, show there is a substantial controversy, between parties having adverse legal interests, of sufficient *immediacy* and *reality* to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (emphasis added)). The court cannot issue "'an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Aetna Life Ins. Co.*, 300 U.S. at 240–41).

After *MedImmune*, whether there has been potentially infringing activity or meaningful preparation to conduct potentially infringing activity "'remains an important element in the totality of circumstances [that] must be considered in determining whether a declaratory judgment is appropriate'" in an intellectual property dispute. *See Prasco, L.L.C. v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) (quoting *Cat Tech L.L.C. v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008)). If a declaratory-judgment plaintiff has not taken "significant, concrete steps to conduct infringing activity," the dispute is neither "'immediate' nor 'real' and the requirements for justiciability have not been met." *Cat Tech L.L.C.*, 528 F.3d at 880 (quoting *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990)). Put another way, in order to demonstrate "a 'case or controversy' in a declaratory relief action, 'the plaintiff must have actually produced the accused article or have engaged in preparations for production such that '*but for a finding that the product infringes or for extraordinary and unforeseen contingencies, the plaintiff would and could begin production immediately*." *Sobini Films v. Tri-Star Pictures Inc.*, Civ. Action No. 01-6615, 2001 WL 1824039, at *4 (C.D. Cal. Nov. 21, 2001) (quoting *Heerema Marine Contractors v Santa Fe Int'l Corp.*, 582 F.Supp. 445, 448–49 (C.D.Cal. 1984)) (emphasis original).

In the instant matter, the infringing activity is plaintiff's anticipated production and release of a film derived from *Armageddon* and depicting the character "Buck Rogers." In preparation to produce and release this film, plaintiff has "retained the services of" and entered into "fully executed agreement[s]" with producers Murphy and Montford, screenwriters Dille and Neumaier, and visual effects supervisor Irastorza.

(ECF No. 54 ¶ 10.) A "screenplay adaptation" is "currently underway" and a treatment of the film has been completed, "submitted for registration with the U.S. Copyright Office," and attached herein. (*Id.* ¶ 11.) "Pre-visualization" on the film has "start[ed]." (*Id.* ¶ 10) Plaintiff has "preliminar[y,] . . . firm interest" in the project from Warner Brothers, Sony, and Legendary Pictures. (*Id.*) Plaintiff "publicly announced its development of the motion picture project based upon" *Armageddon* at "Comic-Con in San Diego, California in July 2015." (*Id.* ¶ 11.)

When accepted as true and viewed favorably, the facts alleged in the second amended complaint show plaintiff has taken "significant, concrete steps" toward producing and releasing its film. *Cat Tech L.L.C.*, 528 F.3d at 880. A dispute requires both "'immediacy'" and "'reality'" to warrant the issuance of a declaratory judgment. *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co.*, 312 U.S. at 273). At this time, plaintiff has made the requisite showing of reality, but has not yet established the immediacy of this dispute.

### 1.    IMMEDIACY

The second amended complaint fails to allege facts establishing the immediacy of this dispute, as required under Article III. Generally, the "greater the length of time before potentially infringing activity is expected to occur, 'the more likely the case lacks the requisite immediacy'" under Article III. *Cat Tech L.L.C.*, 528 F.3d at 881 (quoting *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004)); *see Sobini Films*, 2001 WL 1824039, at *7 (citing *Lang*, 895 F.2d at 761).

The second amended complaint does not contain specific, or even approximate, allegations about when plaintiff could begin film production, let alone release the allegedly infringing film, assuming a declaratory judgment was to be entered in plaintiff's favor. Plaintiff asserts in its Memorandum of Law in Opposition to the Motion to Dismiss that "Plaintiff is immediately prepared to physically shoot this film, but [for] the fact . . . that financing can never be secured as a proximate cause of Defendant's repeated threats." (ECF No. 68 at 2.) Plaintiff, however, makes no such allegations with respect to the timing of production within the second amended complaint or the attached exhibits. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.* 98 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

A dispute "lacks immediacy" where there are no allegations in the complaint with respect to "when, if ever," the product will be "used in a manner that could potentially infringe" the intellectual property rights of another. *See Matthews Int'l Corp. v. Biosafe Eng'g, L.L.C.*, 695 F.3d 1322, 1328 (Fed. Cir. 2012). Plaintiff's nebulous allegations that "development of the [film] is *well underway*" and that "it has taken significant, concrete steps toward producing and releasing its film" are conclusory and insufficient to show the immediacy required by Article III. *Cf. id.* at 1329 ("[P]otential future infringement . . . [is not] sufficiently immediate. . . ."). Plaintiff has provided no specific or new allegations with respect to the timing of their proposed film. There is no way to determine from the face of plaintiff's second amended complaint when, if ever, plaintiff would begin

production on their proposed film as plaintiff has not "indicated the estimated time frame for completing the potentially infringing product." *Sobini Films*, 2001 WL 1824039, at *5.

While the court is aware that plaintiff cannot secure financing without a declaratory judgment in its favor, plaintiff alleges no schedule or timeline for the production of the film even in the event that this court does issue the judgment. Consequently, the court cannot determine from the face of the second amended complaint that *but for* the instant action plaintiff would immediately be able to begin production. *See Id.* at *4.

The court is especially concerned about the immediacy of this production, because at the present time plaintiff does not appear to have incurred any real obligations or expenses with respect to the production of their proposed film. While plaintiff has "fully executed agreements" with screenwriters, producers, and a visual effects supervisor, (ECF No. 54 ¶ 10.), these agreements appear to be contingent on some later instruction from plaintiff. There is no indication from the complaint or the attached exhibits as to when, if ever, the obligations laid out in these agreements will be triggered by plaintiff. Additionally, the second amended complaint makes no allegations about the expenses plaintiff has already incurred in preparation for this film. While pre-production investment is not dispositive, plaintiff's development costs can serve as an indication that plaintiff has engaged in concrete steps sufficient to demonstrate immediacy. *Sobini Films*, 2001 WL 1824039, at *4 ("vagueness surrounding how much of [the development cost] was borne by Plaintiff supports [the] conclusion that Plaintiff is prematurely seeking

declaratory relief at this preliminary stage and that Plaintiff is impermissibly requesting an advisory opinion.").

Because the second amended complaint alleges neither when film production could begin nor when the infringing film could be released, the court cannot conclude from the face of the complaint that plaintiff is "immediately prepared" to engage in copyright-infringing activity, as required under the DJA and Article III. *Sobini Films*, 2001 WL 1824039, at *5; *cf. Matthews Int'l Corp.*, 695 F.3d at 1329 (concluding that without "specific and concrete evidence" about when infringement will occur, "any judicial determination" regarding infringement "would be premature"); *Sierra*, 363 F.3d at 1379 (no immediacy where a prototype of an allegedly infringing product would not operate until more than one year after the complaint was filed); *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527 (Fed. Cir. 1992) (no immediacy where clinical trials of a potentially infringing product began shortly after the complaint was filed and the product was "years away" from being approved by the Food and Drug Administration); *Lang*, 895 F.2d at 764 (no immediacy where the allegedly infringing product "would not be finished until at least [nine] months after the complaint was filed").

While the court recognizes that full production cannot begin on this project without financing and that plaintiff cannot acquire financing while this action remains outstanding, the second amended complaint makes no allegations regarding the time frame for the start of production or release of plaintiff's film even in the event that plaintiff is successful in the instant action. Without factual allegations about the timing of

plaintiff's infringing activity, the court cannot find that the second amended complaint establishes the immediacy of this dispute.

### 2. REALITY

Conversely, plaintiff's second amended complaint alleges sufficient facts to establish the *reality* of this dispute. A dispute is not sufficiently real if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985). The dispute must not be "nebulous or contingent" but must have taken on a "fixed and final shape" so the court can "see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952). The purpose of the "case or controversy" requirement is to ensure that the court's judgment is not purely advisory. *Sierra*, 363 F.3d at 1379. "The greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject." *Id.*

The second amended complaint contains sufficient allegations showing that the proposed film has taken on a fixed shape, such that a decision by the court on the underlying merits of plaintiff's claim would not be purely advisory. In particular, plaintiff makes several allegations in the second amended complaint, not included in their earlier complaints. These include that (1) plaintiff has a "fully executed producer agreement with Susan Montford and Don Murphy" (ECF No. 64 ¶ 10.); (2) plaintiff has a "fully

executed writer agreement with Flint Dille . . . [and a] fully executed writer agreement with Ed Neumeier" (*Id.*); (3) "[plaintiff] has retained the services of Edward Irastorza as visual effects supervisor to start pre-visualization on the project in California" and has a "fully executed visual effects agreement with Edward Irastorza" (*Id.*); (4) "[t]he screenplay adaptation [is] currently underway based on an already completed treatment thereof which Plaintiff has submitted for registration with the U.S. Copyright Office" (*Id.*); and (5) "[p]laintiff has preliminarily obtained firm interest from several major motion picture studios . . . none of which can presently be pursued until the declaratory relief sought herein can be obtained" and "[t]here is a generally understood principal in the motion picture industry that as long as a claimant asserts that a public domain work is still under copyright, even if lacking a factual basis or a good faith belief in making such assertion, no reputable producer can realistically proceed with actual full scale production of a motion picture based thereon." (*Id.* ¶ 23–24.) The second amended complaint also attaches multiple exhibits supporting these allegations, as well as correspondence from two respected movie producers attesting that as a matter of course production companies do not finance films when there are disputes with respect to the underlying rights. (*Id.* ¶ 25–26.)

Through these newly pleaded facts the second amended complaint establishes and provides documentary support demonstrating that, at this time, plaintiff's infringing activity is neither nebulous, nor based solely on contingent future events. Most notably, unlike plaintiff's earlier complaints, the second amended complaint includes a treatment for plaintiff's film, which plaintiff submitted to the U.S. Copyright Office for registration.

(ECF No. 54 ¶ 10.) In registering this treatment for a copyright plaintiff demonstrates that the film is sufficiently concrete, such that the court can make a determination about whether the final product will, in fact, use infringing features of *Armageddon* and the character of "Buck Rogers." The creation and subsequent registration of this treatment indicate that the potentially infringing material has taken on a sufficiently "fixed and final shape," which in turn can allow the court to "see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Pub. Serv. Comm'n of Utah*, 344 U.S. at 244.

Based on the court's reading of both the *Armageddon* novella and plaintiff's treatment for their film, this court is persuaded that the eventual screenplay, even if it differs in certain aspects from the proffered treatment, will encompass "infringing features," including characters, story lines, settings, and thematic elements. This finding supports plaintiff's argument that this dispute demonstrates the reality necessary to show an actual "case or controversy" exists under the Declaratory Judgment Act.

Plaintiff's complaint is further bolstered by the inclusion of new allegations pertaining to the financing of the proposed film. The second amended complaint contains sufficient allegations for the court to conclude that, *but for* the litigation, plaintiff would be able to secure the necessary financial backing to produce this movie. *Sobini Films*, 2001 WL 1824039, at *4 (in order to demonstrate "a 'case or controversy' in a declaratory relief action, 'the plaintiff must have actually produced the accused article or have engaged in preparations for production such that '*but for a finding that the product infringes or for extraordinary and unforeseen contingencies, the plaintiff would and*

*could begin production immediately*." (quoting *Heerema*, 582 F.Supp. at 448–49) (emphasis original). Plaintiff has shown that Team Angry Filmworks, Inc. has a history of securing large scale funding for similar action films, (ECF No. 64 ¶ 3.); that at least three motion picture studios have expressed interest in financing this film, but are unwilling to provide financing while this action is pending, (*id*. ¶ 10.); and that as a matter of course motion picture studios do not finance projects that are engaged in copyrights disputes. (*Id*. ¶ 24–26.)

These allegations, along with plaintiff's new allegations that it entered into *fully executed agreements* with screenwriters, producers, and a visual effects supervisor (*Id*. ¶ 10.), support the conclusion that plaintiff's proposed film is "substantially fixed, particularly with respect to its potentially-infringing characteristics." *Sierra*, 363 F.3d at 1379. The evidence strongly suggests that the final film will contain infringing features – including the character of Buck Rogers – and that the Trustee will assert the film infringes upon its rights. While plaintiff's second amended complaint could have made stronger claims with respect to the reality of this dispute – for instance by alleging that plaintiff had a fully developed screenplay, had acquired at least conditional financing, or had entered into agreements with a director, lead actors, or other "key talent," *Sobini Films*, 2001 WL 1824039, at *6 – this court, based upon the allegations in the second amended complaint and the exhibits attached to it, is persuaded that the proposed film is in a sufficiently "fixed and final shape," to successfully place plaintiff across the imprecise threshold of *reality*.

## VI. CONCLUSION

While plaintiff's second amended complaint successfully establishes the reality of this dispute, it fails to establish the requisite immediacy needed to support jurisdiction. For this reason, the court will grant defendant's Rule 12(b)(1) motion to dismiss for want of Article III standing. Plaintiff's complaint will be dismissed in its entirety without prejudice to its amendment. Plaintiff may file an amended complaint within sixty days of the issuance of this opinion and order.

Defendant's request to join necessary parties under Rules 12(b)(7) and 19 and plaintiff's evidentiary objections to the exhibits accompanying defendant's motion will be denied because they are moot.

An appropriate order follows.


DATED:        October 14, 2016

**/s/ JOY FLOWERS CONTI**
Joy Flowers Conti
Chief United States District Judge
