**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TEAM ANGRY FILMWORKS, INC., a California corporation,<br><br>　　　　　Plaintiff,<br>　vs.<br>LOUISE A. GEER, as Trustee of the DILLE FAMILY TRUST, and Does 1 – 10, inclusive,<br><br>　　　　　Defendants. | Civil Action No. 2:15-cv-01381-JFC<br><br>The Honorable Joy Flowers Conti<br><br><br><br><br><br><br>**ELECTRONICALLY FILED** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

**I.  INTRODUCTION**

Defendant Louise A. Geer's ("Defendant") fifth motion to dismiss, now in response to Plaintiff Team Angry Filmworks, Inc.'s ("Plaintiff") Third Amended Complaint ("TAC"), is Defendant's latest attempt to avoid the merits and is properly denied in its entirety.  Plaintiff has now more than sufficiently made a showing of immediacy and reality warranting the issuance of a declaratory judgment. It is undisputed that Defendant herself and through a number of representatives has repeatedly made real, imminent, and concrete threats to "shut down" the film and "sue Plaintiff in every court in the land" if it moved forward with production of *Armageddon 2419*. Plaintiff's production of such project is not just an abstract whimsical idea; its production continues to progress - numerous filmmakers have been retained, a script is being written, a copyright registration has been filed, and financing interest has been secured from major film studios and financiers.  Defendant's imminent threats and clouding of title are jeopardizing all of Plaintiff's efforts to produce and distribute *Armageddon 2419*.

Defendant again repeats that no immediate threat warranting court intervention exists because physical film production is not sufficiently underway.  Defendant misapplies the law and ignores the practical realities of the motion picture industry. Furthermore, Defendant discounts

Plaintiff's legitimacy and success in the industry by mischaracterizing Plaintiff's efforts as merely "putative" or "hypothetical."[1] Plaintiff is immediately prepared to begin production, but the fact is, as Defendant's counsel well knows, that financing, even when secured, will never flow as a proximate cause of Defendant's repeated threats, unless jurisdiction is properly exercised. Without it, there is no viable means of further proceeding with physical production.

Accordingly, an actual justiciable controversy exists, and whether *Armageddon 2419* is in the public domain is properly addressed without further delay. Defendant has threatened to sue Plaintiff, as well as one of Defendant's own beneficiaries, should they decide to move forward. Respectfully, Plaintiff submits that all would benefit from obtaining a swift resolution and declaration of rights, before further time and money are expended in continuing production under a cloud of title. Here, the allegations of the TAC are more than sufficient to establish the exercise of jurisdiction. An adjudication concerning this public domain work is crucial before any film based thereon can be economically exploited. Further, Defendant's "indispensable" party argument, which was not timely asserted at the outset, merely serves strategic purposes, does not protect the interests of any absent party, and is easily dispensed with here. Accordingly, the instant motion to dismiss is properly denied with prejudice.

## II.  ARGUMENT
### A. PLAINTIFF'S THIRD AMENDED COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF F.R.C.P. RULES 12(b)(1) AND 12(b)(6).

First, it is axiomatic that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *See* 5 C. Wright & A. Miller, Fed. Prac. & Proc., Civil § 1357, at

---

[1] Apparently, the resume of Plaintiff's President Don Murphy – whose producing credits include all iterations of the widely-popular "Transformers" franchise, as well as "The League of Extraordinary Gentlemen", "Natural Born Killers", and "Real Steel" – are not enough to confirm that Plaintiff's efforts are indeed very real. Motion pictures on which Mr. Murphy has acted as a producer have generated in excess of four billion dollars in box office revenues.

598 (1969). A claim should not be dismissed under Rule 12(b)(6) if the Court determines that the complaint sufficiently states a claim upon which relief can be granted. Except as provided in Rule 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

A Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction may facially or factually challenge the court's jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).[2] Further, when faced with a factual attack, a district court must ensure that a Rule 12(b)(1) motion is based on an adequate factual record.[3] When a claim is challenged under Rule 12(b)(6), the court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009). No claim will be dismissed merely because the trial judge disbelieves the allegations or feels that recovery is remote or unlikely. *See Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555-56 (2007). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Ashcroft v. Iqbal,* 556

---

[2] In reviewing a facial attack, a court considers the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff. *See Gould*, *supra* at 176; *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A facial challenge is a technical defect that occurs when the allegations in the complaint do not sufficiently illustrate the court's jurisdiction. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1350 (2d ed. 1990). When a court's power to hear a case is at issue, a court is free to weigh the evidence regarding jurisdiction. *Mortensen v. First Federal Savings & Loan Assoc.*, 549 F.2d 884, 891-2 (3d. Cir. 1977)).

[3] *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.,* 673 F.2d 700, 711-12 (3d Cir. 1982); *Gould Electronics Inc.*, 220 F.3d at 177. If defendant contests any of the jurisdictional allegations as pled by plaintiff, the court must allow the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence. *Id*.

U.S. 662, 679 (2009).  This standard does not impose a heightened burden than already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. July 30, 2008) (citing *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

Here, Plaintiff's claim for a declaration of non-infringement establishes a case or controversy under the Declaratory Judgment Act, 28 U.S.C. §2201 that is ripe for determination. The TAC alleges numerous sufficient facts which confirm the existence of an actual controversy of a justiciable nature. First, it alleges that Plaintiff is currently developing and producing a motion picture project based upon Philip Francis Nowlan's novella entitled *Armageddon 2419 A.D.* including the character of "Anthony Rogers" a/k/a "Buck Rogers" first appearing therein. The TAC also alleges that Plaintiff's production is well underway, and that Plaintiff has taken numerous and significant concrete steps in producing and exploiting its film. Plaintiff has hired numerous filmmakers, registered for copyright of written materials, and executed a number of agreements for services in connection with production and development of the film. Specifically, Plaintiff has retained the services of writers Flint Dille and Ed Neumeier, who are currently writing the screenplay adaptation based on the completed written treatment which Plaintiff has submitted for U.S. copyright registration. Plaintiff has also retained Susan Montford and Don Murphy as producers on the project, and retained Edward Irastorza as a visual effects supervisor to start pre-visualization on the project in California.  Moreover, Plaintiff has now also obtained a letter of intent from noted and famous director David Dobkin, confirming his intent to direct *Armageddon 2419*.  *See* TAC ¶¶9-10, and Exs. "A"-"F", and Ex. "1" attaching fully executed agreements and acknowledgment of copyright registration application, *inter alia*.

The TAC also alleges that Plaintiff has preliminarily obtained firm interest from several major motion picture studios and financiers, including Warner Bros., Sony, and Legendary Pictures, to secure funding of the production of a major motion picture based on the project with a budget equal to or in excess of $100,000,000.00, none of which can presently be accessed until the declaratory relief sought herein is issued.[4] Despite such strong commercial interest, the TAC also sets forth their admitted inability to release financing on the film: "[W]e cannot at this point move forward with the project or consider spending money...until these threats are cleared up… As long as these claims exist, whether true or false, there is nothing further that can be done towards developing or producing the film." Additionally, Plaintiff has obtained a letter of intent from Legendary Pictures, setting forth a specific and expedited timeline and schedule to immediately move forward with physical production of the project once title is cleared. *See* TAC ¶10(d) and (f) and Ex. "G" and Ex. "2."

The TAC again alleges that Plaintiff publicly announced its development of the motion picture project at Comic-Con in San Diego, California in July 2015. Since then, Plaintiff and its affiliates have received numerous threats of litigation and cease and desist demands from the Dille Family Trust ("DFT") and its representatives. It further alleges that Defendant and Dan Herman, counsel for DFT, threatened the legal license of Richard Thompson, Flint Dille's attorney (and DFT's former lawyer for over a decade). Defendant and Mr. Herman again asserted a lack of permission to use "Buck Rogers," claiming that Mr. Dille may be liable for any damages caused, and again threatening to proceed with legal action. Furthermore, it also alleges

---

[4] Warner Bros. and Sony are among the "Big Six" major film studios, and Legendary Pictures has produced numerous successful motion pictures over the years including the "Batman" and "Godzilla" franchises and has distributed films through Universal Pictures.

that multiple letters were also sent by Mr. Herman to Plaintiff's president in August 2015 reiterating the above cease and desist demands and threatening imminent litigation against Plaintiff and its affiliates if such demands were not complied with. TAC ¶13-22, Exs. "H"-"I."

Plaintiff has easily met the requirements of Rule 12(b)(1), (6) and (7). Defendant should be ordered to finally answer the TAC without further piecemeal delay. An actual controversy of a justiciable nature currently exists. Since the complaint was filed, Defendant has initiated multiple other lawsuits regarding the same intellectual property. Defendant does not deny this and the instant motion is properly denied.

## B. PLAINTIFF'S DECLARATORY RELIEF CLAIM FOR A DECLARATION OF NON-INFRINGEMENT NOW EASILY ESTABLISHES A CASE OR CONTROVERSY RIPE FOR DETERMINATION BY THIS COURT.

Federal courts have long recognized that declaratory relief is commonly sought in intellectual property disputes. (e.g., patents, copyright, unfair competition, trademarks etc.) See e.g. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118; *Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F. 2d 1542, 1555 (9th Cir. 1990).[5] This court noted that before the Supreme Court's decision in *MedImmune*, "courts applied a two-part test to determine whether a justiciable controversy existed for a declaration of noninfringement of intellectual property rights." Dkt. No. 71, p. 16-17. (citing *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007)). *MedImmune* rejected this two-part test, in favor of a "totality-of-the-circumstances" approach.[6] *Id*. This court held that the *MedImmune* standard for determining

---

[5] *See On Davis v. The Gap, Inc.* 246 F. 3d. 152, 158 (2d Cir. 2001) (Copyright owner entitled to declaratory relief on copyright infringement claim without showing entitlement to monetary relief).

[6] Defendant heavily relies on *Sobini Films v. Tri-Star Pictures, Inc.*, 61 U.S.P.Q.2D (BNA) 1930, 2001 U.S. Dist. LEXIS 23509 (C.D. Cal. Nov. 21, 2001) in its Motion to Dismiss the

justiciablity is "whether the facts alleged, under all the circumstances, show there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (emphasis omitted, internal citations omitted). As set forth below, the TAC clearly meets the *MedImmune* standard for establishing a justiciable case or controversy.

### i. PLAINTIFF'S TAC SUFFICIENTLY PLEADS REALITY.

A dispute is sufficiently real if it is "not 'nebulous or contingent' but must have taken on a 'fixed and final shape' so the court can 'see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.'" Opinion re SAC, Dkt. No. 71, p. 23 (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952)). The TAC, like the SAC before it, contains sufficient allegations "showing that the proposed film has taken on a fixed shape, such that a decision by the court on the underlying merits of plaintiff's claim would not be purely advisory." *Id.* The TAC includes the allegations that plaintiff has a fully-executed agreements for producers, writers, and a visual effects supervisor, as well as a treatment submitted for registration with the U.S. Copyright Office, firm interest from several major studios for financing, and letters of intent from Director David Dobkin and an additional letter of intent from Legendary Pictures, reflecting the expedited timetable for funding and physical production of the film. *See* TAC ¶¶9-10; Exs. "A"-"F"; Ex. "1." These allegations are sufficient to show that this project currently in production has taken on a fixed shape, and therefore the TAC has satisfied the required showing of reality.

### ii. PLAINTIFF'S TAC SUFFICIENTLY PLEADS IMMEDIACY.

---

TAC, which applied this same rejected two-part test in determining whether a declaratory judgment claim established a sufficient case or controversy.

This court has previously relied heavily on *Sobini Films* to establish its requirements for a sufficient showing of "immediacy."  *See* Dkt. No. 71 pp. 19-23.  The standard posed requires "the estimated time frame for completing the potentially infringing product" as well as a finding that "*but for* the instant action plaintiff would immediately be able to begin production."  Dkt. No. 71, p. 21 (citing *Sobini Films*, 2001 WL 1824039, at *4-5) (emphasis in original).  Also, "[w]hile pre-production investment is not dispositive, plaintiff's development costs can serve as an indication that plaintiff has engaged in concrete steps sufficient to demonstrate immediacy."  *Id.* (citing *Sobini Films, supra* at *4).

Although opposing counsel's fondness for the decision is natural, *Sobini Films* is easily distinguished from the case at hand, and should not be used as the standard for "immediacy" post-*MedImmune*.  *Sobini Films* used the two-part test subsequently rejected by *MedImmune*, and therefore does not contain standards useful for the *MedImmune* "totality-of-the-circumstances" test. Defendant argues in a footnote that the reasoning in *Klinger v. Conan Doyle Estate, Ltd.*, 755 F.3d 496 (7th Cir. 2014) should not be considered as it "only cursorily cites *MedImmune* while ignoring its 'immediacy' and 'reality' requirements, and utterly fails to consider the case law following *MedImmune*."  Def.'s Memo. at p.12, fn. 6.  Defendant cannot truly expect this Court to follow this logic and dismiss a Seventh Circuit opinion decided post-*MedImmune* in favor of a case decided in a California district court pre-*MedImmune*, using the exact test that *MedImmune* rejected, with facts only loosely on point. As there are no cases in the Third Circuit directly on point, this Court should follow the more recent ruling post-*MedImmune* ruling opined by the well-respected Judge Richard Posner, not dicta from a California District Court in 2001.

Moreover, contrary to Defendant's characterization, *Sobini Films* did not involve a copyright dispute over whether the character "Zorro" fell into the public domain.  *See* Def.'s

Memo. at p.10 (citing to *Sobini Films*, 2001 WL 1824039, at *5). More accurately, *Sobini Films* involved an assertion of ownership between two adverse claimants disputing the rights to the Zorro character. *See Sobini Films*, 2001 U.S. Dist. LEXIS 23509, at *4 ("Plaintiff asserts that it has title to the Zorro character."). Specifically, the plaintiff in *Sobini Films* asserted ownership to the copyright in the character Zorro, and sought a declaratory judgment to protect its own rights to include that character in a treatment for new film. *Id.* The *Sobini Films* plaintiff only alleged the following: "(1) Sobini acquired rights to the character, (2) Sobini wrote a detailed Treatment for a motion picture featuring the Zorro character, (3) Sobini developed "key art" displaying the Zorro character to be used in promoting the development and production of the picture, and (4) Sobini incurred many thousands of dollars investigating the rights to the character as part of the rights clearance process." *Id.* at *20-21.

Here, in direct contrast to *Sobini Films*, Plaintiff is not asserting a competing ownership right over the "Buck Rogers" copyright, but seeks a declaratory judgment that the original novella and its characters have fallen into the public domain. *See* TAC ¶¶7-8. Plaintiff has undertaken far more than "meaningful preparation" in its production of the *Armageddon 2419* motion picture project. Unlike in *Sobini Films*, Plaintiff has consummated agreements with key filmmakers including screenwriters, producers, and visual effects coordinators, submitted a written treatment to the U.S. Copyright Office for registration, obtained letters of intent from a noted director and major production executive, and is prepared to commence production of the project upon released financing. *See* TAC ¶¶9-10; Exs. "A"-"F"; Ex. "1."

Should this court continue to find authority in *Sobini Films,* the District Court for the Central District of California held that "the finding of an actual controversy should be determined with some liberality." *Sobini Films,* 2001 LEXIS 23509, at *16 (citing *Starter Corp.*

9

*v. Converse Inc.*, 84 F.3d 592, 595 (2d Cir. 1996).  This Court ruled that it was unable to "determine from the face of plaintiff's second amended complaint when, if ever, plaintiff would begin production on their proposed film as plaintiff has not 'indicated the estimated time frame for completing the potentially infringing product'" and proposes that consequently, "the court cannot determine that 'but for the instant action, plaintiff would immediately be able to begin production.'"  Dkt. No. 71, p.20-21 (citing *Sobini Films*, 2001 WL 1824039, at *4-5). As Exhibit 2 to the TAC confirms, Plaintiff has a letter of intent from Legendary Pictures, confirming its agreement and commitment to *Armageddon 2419*, and includes an expedited timeline of expected physical production.  *See* TAC, Ex "2."  Specifically, Legendary Pictures plans for a screenplay to be completed "within three months," when casting and pre-visualization would occur.  *Id.*  The letter of intent also reflects a mere six months before the start of physical production.  *Id.*  Accordingly, because Plaintiff now has secured a schedule and expedited timetable for the physical production of the film, but for Defendant's "clouding," Plaintiff would immediately be able to begin production. Plaintiff has therefore sufficiently satisfied the requirements for a showing of immediacy, even based on the dicta found in *Sobini Films*.

In its analysis of immediacy, this Court also was "concerned" with Plaintiff's lack of incurred obligations.  Dkt. No. 71, p. 21.  This Court noted that "pre-production investment is not dispositive," and again cited to *Sobini Films* to establish that "plaintiff's development costs can serve as an indication that plaintiff has engaged in concrete steps sufficient to demonstrate immediacy."  *Id.*  The court also is concerned about the triggering of obligations in the filmmakers' agreements.  *Id.*  The standard that *Sobini Films* prescribed is derived from a comparison of the *Sobini Films* plaintiff to the *Starter Corp.* plaintiff:

"Among the factors cited by the court were that plaintiff had invested significant time and money in the project, designed styles and prepared prototype shoes, conducted a consumer

survey, made strategic decision regarding who should manufacture the shoes, hired an external licensing agent, and attempted to find a manufacturing partner.  Unlike the plaintiffs in *Starter*, Sobini is not 'immediately prepared' to produce 'Zorro 2040.' For instance, Sobini has not even reached 'preliminary agreements' or obtained commitments from 'key talent' such as a director and lead actors, nor has Sobini even entered into a contract with a writer (or writers) to create a screenplay for 'Zorro 2040.'" *Sobini Films,* 2001 U.S. Dist. LEXIS 23509 at *18.

Neither *Starter Corp.* nor *Sobini Films* require a plaintiff to enter into binding contracts to prove immediacy. Both cases looked for "preliminary agreements," "strategic decision[s]," and "commitments," but neither required strictly enforceable agreements. *Id.*  Defendant focuses on the lack of "binding promissory language or material terms" to distract from the actual immediacy and reality of the agreements that Plaintiff has already produced in support of its claims. Def's Memo, p.1.  Plaintiff's allegations in the TAC are factually much more analogous to the plaintiff in *Starter Corp.* than in *Sobini Films*.  Plaintiff has already invested significant time, made strategic decisions about the various filmmakers who should be attached to the film, hired writers, and secured preliminary project financing.  Further, unlike the *Sobini Films* plaintiff, Plaintiff has already preliminarily reached agreements with writers, producers, a director, a visual effects supervisor, and a financier with commitments by major studios to distribute the film once completed.

Accordingly, the TAC has satisfied the required showing of immediacy in that Plaintiff is not merely seeking an advisory opinion regarding a "hypothetical" dispute as repeatedly mischaracterized by Defendant.  Rather, it is in imminent danger of suffering a death knell to its project if it does not receive a declaration of non-infringement on a work that is undoubtedly in the public domain by this Court without further delay.

### iii. THE TOTALITY OF THE CIRCUMSTANCES SUFFICIENTLY ESTABLISH A JUSTICIABLE CASE AND CONTROVERSY.

In *MedImmune*, the Supreme Court reaffirmed the totality-of-the-circumstances approach in declaratory judgment actions and held that a controversy is justiciable if it is "definite and

concrete, touching the legal relations of parties having adverse legal interests." 549 U.S. at 127 (internal citations omitted).  Following *MedImmune*, in *Klinger v. Conan Doyle Estate Ltd.*, the esteemed Judge Richard Posner held that declaratory relief was appropriate to determine whether the character Sherlock Holmes was in the public domain for purposes of derivative works by subsequent authors. 755 F.3d 496, 497 (7th Cir. 2014). In *Klinger*, the plaintiff was developing an anthology consisting of stories featuring Sherlock Holmes.  *Id.* Judge Posner ruled that because the plaintiff was facing threats to block the distribution of the book by major retailers and a threat to sue for copyright infringement, there was "an actual rather than merely a potential controversy." *Id.* at 499. The court further held that "[t]o require [plaintiff] to defer suit until he finishes the book would gratuitously discourage declaratory-judgment suits by authors and publishers threatened with suits for copyright infringement…and so would discourage authors from ever writing such works in the first place." *Id.* at 500.  In other words, the discouraging of creativity in the public domain sphere was given more authority in evaluating the totality of the circumstances than the relative immediacy in which a book could be finished and published. Defendant attempts to distinguish *Klinger* from the instant action, by highlighting that "[a]lthough the editors hadn't finished the [sequel] book, the[se] companies could estimate its likely commercial success from the success of its predecessor, and thus decide in advance whether to publish and distribute it."  Def's Memo, p. 12-13 fn. 6 (citing *Klinger,* 755 F.3d at 497).  While it is true that the TAC does not allege that Plaintiff has previously produced and distributed a "Buck Rogers" movie or is in negotiations concerning a sequel film with a motion picture studio, this court has acknowledged that Plaintiff "has a history of securing large scale funding for similar action films" and the TAC has alleged that Plaintiff is in negotiations to secure financing with major motion picture studios.  Dkt. No. 71, p. 26; TAC ¶10.

Post-*MedImmune*, Judge Posner found that given the totality of the circumstances, focusing on the multiple threats facing the plaintiff and the potential stifling of creativity involving public domain works, there was a sufficient case or controversy ripe for judgment by the Seventh Circuit. *See generally*, *Klinger*, 755 F.3d 496.  The court in *Klinger* cited to *MedImmune*, although not specifically to the requirements of "immediacy" and "reality" but noting that for a threat "to be effective and thus harm the person seeking declaratory relief, a threat need not be a threat to sue."  *Klinger*, 755 F.3d at 499 (citing *MedImmune*, 549 U.S. at 132).  Accordingly, as the TAC alleges the *Armageddon 2419* novella to be in the public domain, and Plaintiff and its representatives have also been threatened suit for copyright infringement, this court should similarly find that there is an actual rather than merely a potential controversy. Indeed, Defendant has yet to confirm in any of her declarations that she will not institute an infringement action or seek injunctive relief against Plaintiff. If attorneys personally threaten imminent legal action, appropriate protective measures may be taken through legal action such as filing suit for a declaration of non-infringement of a public domain work.

**C.  DEFENDANT'S MOTION ARGUABLY VIOLATES F.R.C.P. 12(g) IN ASSERTING AN "INDISPENSABLE" PARTY ARGUMENT LATE FOR STRATEGIC PURPOSES.**

A party is generally permitted to make only one Rule 12 motion, thus, a party who intends to have the court resolve any Rule 12 defense or objection at the pre-answer stage must also simultaneously present to the court *every* other Rule 12 defense or objection the party intends to raise.  *See McCurdy v. American Board of Plastic Surgery*, 157 F. 3d 191, 194 (3d Cir. 1998).  Moreover, omitting other non-waivable Rule 12 defenses and objections likely waives the party's right to have those matters considered at the pre-answer stage, thus relegating the party to wait until later in the case to assert them.  *See Negron v. School District of Philadelphia*, 994 F. Supp. 2d 663 (E.D. Pa. 2014).

Here, Defendant's initial motion to dismiss was denied, albeit without prejudice. Defendant neither re-filed the same denied motion to dismiss (from the Central District of California) nor sought leave to file a new and different 12(b)(1) and 12(b)(6) motion, instead filing (without leave) a different motion on new Rule 12 grounds including arguments which could have previously been filed. Defendant now files yet another motion to dismiss, again including for failure to join a Rule 19 party under Rule 12(b)(7). Dkt. No. 76. Federal courts have held that the trial judge enjoys the discretion to reject such a Rule 12(b)(7) motion as untimely if the motion is found to have been submitted intentionally late to serve a litigant's own strategic purposes, rather than to protect the interests of the absent party. *Stooksbury v. Ross,* 528 Fed. Appx. 547, 556 (6th Cir. 2013). Under *Negron,* this successive filing of pre-answer motions is generally precluded, and Plaintiff submits that Defendant should be ordered to answer the Complaint in order that the merits of this claim can finally be addressed. *See Negron*, *supra*.

In any event, Defendant's "indispensable" party argument, even assuming *arguendo* that it was asserted timely, does not warrant joinder here. In determining whether a party is "indispensable," the court must evaluate the facts as they existed when the case was filed, not after. *Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.* 320 F. 3d 1081, 1097 (10th Cir. 2003). The court will not require joinder unless it cannot provide *meaningful* relief in the absence of the party sought to be joined. *See Northrop Corp. v. McDonnell Douglas Corp.* 705 F.2d 1030, 1043-1044 (9th Cir. 1983).

Here, Ms. Geer's declaration impermissibly evidences several legal actions and/or administrative filings concerning trademark issues initiated by Defendant in other forums *after* the initiation of the instant lawsuit in August 2015. Moreover, the specific issue of whether the novella at issue in this case has entered the public domain under the Copyright Act is not being

specifically litigated in any of the forums implicated or referenced in the exhibits attached to Ms. Geer's most recent declaration. Accordingly, this Court can absolutely provide meaningful relief on the declaration of rights sought under copyright, separate and apart from Defendant's attempt to drag Plaintiff into another bitter dispute that does not concern Plaintiff. Defendant's motion under Rule 12(b)(7) and Rule 19 is not timely, is brought with unclean hands, and sidesteps the complete relief that this Court can accord under copyright as to this public domain work.

### D.  ALTERNATIVELY, IF THE COURT IS INCLINED TO GRANT THE MOTION, PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ITS PLEADING.

Plaintiff respectfully submits that the instant motion is properly denied in its entirety. However, if granted, where issues of declaratory relief jurisdiction are raised and the court declines to exercise its jurisdiction, it must state its reasons on the record. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 673 (9th Cir. 2005).  In any event, "the court should freely give leave [to amend a complaint] when justice so requires."  F.R.C.P. 15(a).  Under the circumstances, if the Court is at all inclined to consider granting the instant motion, Plaintiff respectfully requests that it be given further leave to amend.

### III. CONCLUSION

Accordingly, there currently exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  The instant motion is properly denied.

Respectfully submitted,

Dated:  January 27, 2017                By:  /s/ Charles M. Coate
Charles M. Coate (SBN CA 140404);
ABRAMS COATE LLP
12400 Wilshire Blvd. #1060, Los Angeles, CA 90025
Tel: (310) 576-6161; Fax: (310) 576-6160
Email: ccoate@abramscoate.com
Attorneys for Plaintiff Team Angry Filmworks, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to Local Rule 5.6 of the United States District Court for the Western District of Pennsylvania, the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT has been served by electronic means through the Court's transmission facilities on the following counsel of record:

David Aronoff, Esq.
FOX ROTHSCHILD LLP
1800 Century Park East, Suite 300
Los Angeles, CA 90067-1506
daronoffo@foxrothschild.com

Jana C. Volante, Esq.
FOX ROTHSCHILD LLP
BNY Mellon Center
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
jvolante@foxrothschild.com

ABRAMS COATE LLP

Dated: January 27, 2017   By:___/s/ Charles M. Coate_____
CHARLES M. COATE