# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TEAM ANGRY FILMWORKS, INC.**, *a California company*, Plaintiff, | ) ) ) ) |
| v. | ) ) Civ. No. 15-1381 |
| **LOUISE A. GEER**, *as Trustee of the Dille Family Trust*, Defendant. | ) ) ) ) |

## OPINION

CONTI, Chief District Judge

## I. Introduction

California film-production company Team Angry Filmworks, Inc. ("plaintiff") calls upon the court to declare that Philip Francis Nowlan's 1928 science-fiction novella *Armageddon–2419 A.D.* ("*Armageddon*") and character "Buck Rogers" entered the public domain, pursuant to the Declaratory Judgment Act (the "DJA"), 28 U.S.C. § 2201(a). As trustee of the Dille Family Trust (the "Trust"), defendant Louise A. Geer ("defendant") filed the instant motion:

- to dismiss the third amended complaint under Federal Rule of Civil Procedure 12(b)(1) for failure to present a justiciable controversy under the DJA and Article III of the Constitution; or

- in the alternative, to join necessary parties or to dismiss for lack of indispensable parties under Federal Rules of Civil Procedure 12(b)(7) and 19. (ECF No. 75.)

Having been fully briefed, defendant's motion is ripe for disposition. For the reasons explained in this opinion, the court will: (1) deny defendant's Rule 12(b)(1) motion to dismiss for want of Article III standing; and (2) deny defendants motion for joinder of necessary parties or dismissal for lack of indispensable parties under Rules 12(b)(7) and 19, without prejudice.

## II. **Background**

The factual background of this case was already laid out extensively in this court's prior opinions considering defendant's motions to dismiss the the first amended complaint and the second amended complaint. *See* Team Angry Filmworks, Inc. v. Geer, Civ. Action No. 15-1381, 2016 WL 1086370 (W.D. Pa. Mar. 21, 2016) [hereinafter Team Angry Filmworks I]; Team Angry Filmworks, Inc. v. Geer, No. CV 15-1381, 2016 WL 6039068 (W.D. Pa. Oct. 14, 2016) [hereinafter Team Angry Filmworks II]. The court will, therefore, proceed with only a brief summary of the relevant facts.

This case was initially filed in the United States District Court for the Central District of California. (ECF No. 1.) The California district court found venue proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b)(1) and transferred the action to this court under 28 U.S.C. §§ 1404(a) and 1406(a). (ECF No. 27 at 2.) On January 7, 2016, this court granted defendant's first Rule 12(b)(1) motion to dismiss without prejudice. (ECF No. 53.) On January 29, 2016, plaintiff filed its first amended complaint. (ECF No. 54.) Defendant responded by filing a motion to dismiss or in the

alternative for joinder of an indispensable party. (ECF No. 55.) The court granted defendant's motion to dismiss plaintiff's first amended complaint on the grounds that the complaint failed to allege a justiciable controversy under the Declaratory Judgment Act ("DJA") and Article III of the United States Constitution. Team Angry Filmworks I, 2016 WL 1086370. Plaintiff filed a second amended complaint, which the court dismissed on the same grounds. Team Angry Filmworks II, 2016 WL 6039068.

In its opinions in both Team Angry Filmworks I and Team Angry Filmworks II, this court explained in depth the test courts use to determine whether a justiciable controversy exists under the DJA and Article III. In MedImmune, the Supreme Court affirmed the totality-of-the-circumstances approach and held that a controversy is justiciable under Article III and the DJA if it is "'definite and concrete, touching the legal relations of parties having adverse legal interests.'" MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227, 240–41 (1937)). The "'question in each case'" after MedImmune is "'whether the facts alleged, under *all the circumstances*, show there is a substantial controversy, between parties having adverse legal interests, of sufficient *immediacy* and *reality* to warrant the issuance of a declaratory judgment.'" Id. (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) (emphasis added)).

In Team Angry Filmworks II, this court determined that plaintiff's second amended complaint satisfied the "reality" prong of MedImmune, but that plaintiff still failed on the "immediacy prong." Team Angry Filmworks II, 2016 WL 6039068, at *10–

3

11. In particular, this court held that "because the second amended complaint alleges neither when film production could begin nor when the infringing film could be released, the court cannot conclude from the face of the complaint that plaintiff is 'immediately prepared' to engage in copyright-infringing activity, as required under the DJA and Article III." Id. at 10. Because plaintiff did not satisfy the immediacy prong this court granted defendant's motion to dismiss without prejudice. Id. at 12.

On December 12, 2016, plaintiff filed its third amended complaint. (ECF No. 73.) While plaintiff's third amended complaint contains many of the same factual allegations as the earlier complaints, it also included additional concrete assertions with respect to the timing of pre-production and production for plaintiff's proposed film. Plaintiff attached to the third amended complaint "a Letter of Intent with Legendary Pictures confirming its intent to make 'Armageddon 2419' when this legal situation is cleared up." (*Id.*) The letter outlined a clear timeline for developing a screenplay, casting the roles, completing pre-visualization (three months) and commencing filming (within six months). (ECF No. 73-2). This timeline was also stated in the body of the third amended complaint. (ECF No. 73 ¶ 10.)

On January 9, 2017, defendant filed a motion to dismiss plaintiff's third amended complaint pursuant to Rules 12(b)(1) and 12(b)(7) and a motion for joinder of necessary parties or dismissal for lack of indispensable parties under Rules 12(b)(7) and 19, along with accompanying briefs and exhibits. (ECF Nos. 75, 76, 77.) On January 27, 2017, plaintiff filed a response in opposition to defendant's motion, a brief in opposition, and

objections to defendant's exhibits. (ECF Nos. 79, 80, 81.) On March 10, 2017, this court held a hearing to discuss defendant's motion.[1] Having been fully briefed, defendants' motion to dismiss and motion to join necessary parties is ripe for disposition.

**III.   Discussion**

   **A. Defendant's Motion to Dismiss**

Because this court already outlined the standards for a Rule 12(b)(1) motion and for establishing a case of controversy under the Article III, the DJA, and MedImmune in its previous decisions on this matter, Team Angry Filmworks I, 2016 WL 1086370, Team Angry Filmworks II, 2016 WL 6039068, the court will not repeat those standards here. Instead the court will proceed directly to the outstanding issue: immediacy.

A dispute "lacks immediacy" where there are no allegations in the complaint with respect to "when, if ever," the product will be "used in a manner that could potentially infringe" the intellectual property rights of another. *See* Matthews Int'l Corp. v. Biosafe Eng'g, L.L.C., 695 F.3d 1322, 1328 (Fed. Cir. 2012). In order "to establish a 'case or controversy' in a declaratory relief action, 'the plaintiff must have actually produced the accused article or have engaged in preparations for production such that '*but for a finding that the product infringes or for extraordinary and unforeseen contingencies, the plaintiff would and could begin production immediately.*' " Sobini Films v. Tri-Star Pictures Inc., Civil Action No. 01-06615, 2001 WL 1824039, at *4 (C.D. Cal. Nov. 21, 2001) (quoting

---

[1] In response to the issues raised during the hearing on March 10, 2017, plaintiff withdrew the trademark claim contained within its third amended complaint without prejudice. (ECF No. 83.) The claims made in plaintiff's third amended complaint now exclusively involve issues of copyright law with respect to *Armageddon 2419 A.D.*

5

Heerema Marine Contractors v Santa Fe Int'l Corp., 582 F.Supp. 445, 448–49 (C.D.Cal. 1984)) (emphasis original).

Unlike the second amended complaint, which this court dismissed for lack of immediacy, the third amended complaint contains sufficiently specific allegations with respect to the timing of plaintiff's film production, assuming a declaratory judgment is entered in plaintiff's favor. Plaintiff attached to the third amended complaint a letter of intent from the executive vice president of Legendary Pictures outlining a clear and immediate timeline for the production of the allegedly infringing film. Plaintiff asserts, through the letter provided by Legendary Pictures, that the screenplay, casting, and previsualization can all be completed within three months and that the parties can begin "making the film" within six months. (ECF No. 73-2.) These assertions represent a marked change from plaintiff's earlier briefings, which provided no specificity with respect to the timing of production or filming.[2]

---

[2] Plaintiff's previous complaint contained only conclusory allegations that "development of the [film] is *well underway*" and that "[plaintiff] has taken significant, concrete steps toward producing and releasing its film." (ECF No. 63.) The court found that these conclusory statements were insufficient to show the immediacy required by Article III. *See Matthews Int'l Corp. v. Biosafe Eng'g, L.L.C.*, 695 F.3d 1322, 1329 (Fed. Cir. 2012) ("[P]otential future infringement . . . [is not] sufficiently immediate. . . ."). The only time plaintiff spoke specifically about timing of their allegedly infringing activity was in their Memorandum of Law in Opposition to the Motion to Dismiss. (ECF No. 68 at 2.) ("Plaintiff is immediately prepared to physically shoot this film, but [for] the fact . . . that financing can never be secured as a proximate cause of Defendant's repeated threats.") The court found it problematic that this assertion was not made within the body of the second amended complaint.

Plaintiff's third amended complaint adequately alleges facts establishing the immediacy of this dispute, as required under Article III. The new assertions regarding the production timeline for plaintiff's film provide "specific and concrete evidence" about when infringement will occur, Matthews Int'l Corp., 695 F.3d at 1329 – namely, within three to six months of the completion of this litigation. This timeframe is sufficiently immediate to satisfy the first prong of MedImmune, as plaintiff appears "ready to 'immediately produce' the potentially infringing item." Sobini Films, 2001 WL 1824039, at *8. The proffered timelines of three and six months indicates that but for this litigation, plaintiff has "an immediate capability and intent to produce an allegedly infringing item." Swedlow, Inc. v. Rohm & Haas Co., 455 F.2d 884, 886 (9th Cir. 1972)

While the court recognizes that the letter of intent from Legendary Pictures is nonbinding, and that there is a possibility that the infringing film may not be produced even if plaintiff secures a favorable declaratory judgment, the immediacy standard does not require an absolute guarantee that the infringing product will be produced. Heerema Marine Contractors, et al. v. Santa Fe Int'l Corp., 255 U.S.P.Q. 41, at *42 (1984)) (finding that, *inter alia*, a letter of intent to enter into a contract to install an allegedly infringing item "evidenc[ed] a definite intention to utilize the potentially infringing [item]" in the immediate future.). Here, the immediacy prong merely requires a showing by plaintiff that, but for the copyright dispute, "*the plaintiff would and could begin production immediately.*" Sobini Films, 2001 WL 1824039, at *4 (emphasis original). Plaintiff has provided sufficient evidence to meet this standard, particularly in light of the

practical difficulties that come with securing financing for a film whose subject matter is involved in a copyright dispute. As plaintiff explained at length, production companies, as a matter of course, do not finance movies when such disputes exist. (ECF No. 73 ¶¶ 25–26.) Given the difficulties associated with proving immediacy when financing is nearly impossible, the court finds that plaintiff's timeline outlining several stages of pre-production and production, as laid out in the letter of intent from Legendary Pictures, meets the requirements under the DJA for establishing immediacy.

Because plaintiff's third amended complaint establishes the immediacy of this dispute, and in that complaint plaintiff reiterates the factual allegations set forth in the second amended complaint that establish the reality of this dispute, *see* Team Angry Filmworks II, 2016 WL 6039068, the court concludes that this action involves a justiciable controversy. The court will, therefore, deny defendant's Rule 12(b)(1) motion to dismiss for want of Article III standing.

### B. Defendant's Motion for Joinder of Necessary Parties or Dismissal for Lack of Indispensable Parties

Defendant filed a motion for joinder of necessary parties or dismissal for lack of indispensable parties under Rules 12(b)(7) and 19. Defendant is currently engaged in litigation in federal court in the Eastern District of Pennsylvania with the Nowlan Family Trust ("NFT"), Dille Family Trust v. Nowlan Family Trust, No. 2:15-cv-06231-WB (E.D. Pa. filed May 5, 2016) and Armageddon, LLC ("AL") Dille Fmaily Trust, T.T.A.B. Opposition No. 91225273 (filed December 9, 2015). Those cases arise out of disputes

with respect to trademark rights of "Buck Rogers" and *Armageddon 2419 A.D.* Defendant requests that the court join NFT and AL to this action, or, if joinder is not feasible, that the court dismiss plaintiff's second amended complaint with prejudice for lack of an indispensable party. ([ECF No. 75](#) ¶ 10–11.)

1. **Rule 19 standard**

[Federal Rule of Civil Procedure 19](#) governs the determination whether joinder of a party is compulsory. Rule 19 is comprised of subdivisions (a) and (b). As the Third Circuit Court of Appeals has explained, Rule 19 contemplates a two-step analysis:

> A court must first determine whether a party should be joined if "feasible" under Rule 19(a). If the party should be joined but joinder is not feasible because it would destroy [subject-matter jurisdiction], the Court must then determine whether the absent party is "indispensable" under Rule 19(b). If the party is indispensable, the action therefore cannot go forward.

*[Janney Montgomery Scott v. Shepard Niles,](#)* [11 F.3d 399, 404 (3d Cir.1993)](#). Thus, a court must first determine whether an absent party is "necessary" for a just adjudication of a case under Rule 19(a).

Rule 19(a)(1) provides in pertinent part that:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (A) in the person's absence complete relief cannot be accorded among those already parties or (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest ...

Under Rule 19(a)(1), a court must determine if complete relief can be accorded among those who are already parties to this action. *Angst v. Royal Maccabees Life Insurance Co.*, 77 F.3d 701, 705 (3d Cir.1996). "Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *Id.* The court must determine whether the prevailing party would receive "hollow relief" were the absent party not joined to the pending action. *Id.*

Where complete relief can be accorded to the existing parties without joining the absent party, the absent party may still be necessary pursuant to subsection (a)(1)(B) of the rule. Under subsection (a)(1)(B)(i) the court must determine whether the absent parties claim an interest relating to the subject of the pending action and whether disposition of the pending action would "as a practical matter impair or impede" the ability of the absent parties to protect this interest. To impair or impede in this manner,

> the federal judgment must have a "direct and immediate" effect on the [other] proceedings. "[I]t must be shown that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments."

*Id*. (quoting *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 407 (3d Cir.1993)).

If a party is not considered necessary under subsection (a)(1)(B)(i), they may still be necessary under subsection (a)(1)(B)(ii) if their absence from the instance action would leave either plaintiff or defendant "subject to a substantial risk of incurring double,

multiple, or otherwise inconsistent obligations by reason of the claimed interest." *Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as The Sindia*, 895 F.2d 116, 122 (3d Cir. 1990). The Third Circuit Court of Appeals has held that subsection (a)(1)(B)(ii)

> is primarily aimed at protecting parties before the court. The subdivision was enacted to protect parties from a "substantial" risk of multiple or inconsistent obligations, not merely a possible risk. The subdivision also helps to protect defendants from "needless" multiple litigation. A court considering [Rule 19(a)(1)(B)(ii)] must balance the plaintiff's choice of forum against the policies of judicial economy and fairness to other parties.

Id. (citations omitted). Subsection (a)(1)(B)(ii) protects litigants against multiple *obligations*; it does not protect parties against multiple legal actions. *Id*. at 123; *Boone v. General Motors Acceptance Corp.,* 682 F.2d 552, 554 (5th Cir.1982); *Field v. Volkswagenwerk AG,* 626 F.2d 293, 300–302 (3d Cir.1980).

If the court determines that the absent party or parties are necessary the court must join them, so long as it is feasible to do so.

### 2. **Background of Pending Litigation Between Defendant and NFT/AL**

Defendant is currently involved in trademark disputes with the Nowlan Family Trust ("NFT") and Armageddon, LLC ("AL"), "an entity apparently controlled by NFT". (ECF No. 77 ¶ 2.)[3]  Defendant states that "[o]n January 15, 2009 [NFT] filed an intent-

---

[3] Plaintiff objects to the statements submitted by Louise A. Geer in her declaration in support of defendant's motion for joinder at ECF. No. 67. Plaintiff asserts that paragraphs two and three of Ms. Geer's declaration are "irrelevant and inadmissible for purposes of the instant motion as to purported facts unrelated to this plaintiff and not in existence at the time this case was filed." (ECF No. 69 at 3, 4.) Here, and elsewhere, plaintiff claims

to-use application to register the trademark BUCK ROGERS." (ECF No. 67-1 ¶ 53.) The Patent and Trademark Office "examined the Application and published the Application for opposition on June 14, 2011." (*Id.*) Defendant "filed a Notice of Opposition with the [Trademark Trial and Appeal Board] on or about July 12, 2011." (*Id.*)

On September 25, 2015, the Trademark Trial and Appeal Board ("TTAB") rendered a decision dismissing defendant's opposition. (ECF Nos. 77 ¶ 2, 77-1 ¶ 54.) Defendant appealed this decision to the District Court for the Eastern District of Pennsylvania. (ECF No. 77-1). On May 5, 2015, defendant filed its second amended complaint in that case, which withstood a motion to dismiss. (ECF No. 77 ¶ 2.) That litigation is well underway, with summary judgment and *Daubert* motions due to be filed by May 17, 2017. (*Id.*)

Defendant is also engaged in litigation with AL, which sought to register the trademark "*Armageddon 2419 A.D.*" (*Id.*) On December 9, 2015, defendant filed a notice of opposition with respect to the registration of this mark. (*Id.*) On August 15, 2016 the TTAB suspended proceedings in that matter pending a final decision in the appeal of the TTAB's decision with respect to NFT's application.

3. **Discussion**

---

that the actions between defendant and NFT and AL are not relevant because defendant initiated the cases against NFT and AL "subsequent to the initiation of the instant lawsuit." (ECF No. 69 at 14.) Plaintiff provides no evidence to support this conclusion, and as far as this court can tell, defendant first asserted its trademark claims against NFT as early as July 2011. (ECF No. 67-1 ¶ 53.) At this time the court will entertain the evidentiary evidence submitted by defendant in support of her motion for joinder.

To determine whether joinder is appropriate in this case, the court must first determine whether NFT and AL are necessary parties. Under Rule 19(a)(1), a party is necessary if complete relief cannot be accorded among those who are already parties to the action. Angst v. Royal Maccabees Life Insurance Co., 77 F.3d 701, 705 (3d Cir.1996). "Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." Id.

Here, it appears that complete relief can be accorded among the present parties. Plaintiff claims that *Armageddon* and "Buck Rogers" have entered the public domain pursuant to the Copyright Law of the United States, 17 U.S.C. §§ 301–305, and the First Amendment to the United States Constitution. (ECF No. 73 ¶ 40.) Plaintiff requests "a judicial determination and order declaring that" the copyright for *Armageddon* has expired and that the story elements and characters, particularly the character of Buck Rogers, have entered the public domain. (*Id.* at 22.) Were this court to decide in plaintiff's favor, the court could provide complete relief to plaintiff through a declaratory judgment. Conversely, were this court to determine that *Armageddon* and "Buck Rogers" have not entered the public domain, the court could provide complete relief to defendant by finding in its favor on summary judgment or after trial. The absent parties are not necessary under Rule 19(a)(1), as neither party, if they were to prevail, would receive "hollow relief" in the absence of NFT and AL.

Under subsection (a)(1)(B)(i) the court must determine whether NFT and AL claim interests relating to the subject of this action and whether disposition of this action

13

would "as a practical matter impair or impede" NFT or AL's ability to protect this interest. With the withdrawal of plaintiff's Lanham Act claim from their third amended complaint, (ECF No. 83) plaintiff's complaint only contains claims regarding issues of copyright law with respect to *Armageddon 2419 A.D* and the story elements and characters originating therein. (ECF No. 73 at 22–23.) It does not appear that a finding in this court about the *copyright* of *Armageddon 2419* will affect NFT and AL's pending *trademark* litigation. Copyright and trademark are distinct areas of the law.

> The fact that a copyrightable character of design has fallen into the public domain should not preclude protection under the trademark law so long as it is shown to have acquired independent trademark significance, identifying in some way the source or sponsorship of the goods. Because the nature of the property right conferred by copyright is significantly different from that of trademark, trademark protection should be able to co-exist and possibly to overlap with copyright protection without posing preemption difficulties.

Frederick Warne Co., Inc. v. Book Sales Inc., 481 F. Supp. 1191, 1196 (S.D.N.Y. 1979). This court is not convinced that, even if it does determine that the material in question entered the public domain, that such a determination will impede NFT and AL's rights under trademark law.

Additionally, courts within the Third Circuit have held that subsection (a)(1)(B)(i) does not apply where the absent party can voluntarily assert that its interest would be impaired or impeded without joinder, and the absent party has not asserted such an interest. *Radian Guar. Inc. v. Bolen*, 18 F. Supp. 3d 635, 641–42 (E.D. Pa. 2014)("Subdivision [(a)(1)(B)(i)] of Rule 19 clearly does not apply to this case because [the absent party] may always protect its interest . . . by voluntarily appearing and

asserting its rights." ) (quoting *Sindia Expedition, Inc. v. Wrecked & Abandoned Vessel, Known as The Sindia*, 895 F.2d 116, 122 (3d Cir. 1990)). Courts have held, however, that "[i]t is appropriate, in considering a motion under Rule 19, to ask the absent party herself whether she believes that her interests would be jeopardized in the absence of joinder. While that person's response is not dispositive of the issue, it may provide a helpful counterbalance to the moving party's assertions." Kessler v. Pollick, 851 F. Supp. 687, 691 (E.D. Pa. 1994) (citations omitted). Because NFT and AL did not assert an interest in this action, and the court is not convinced that NFT and AL's trademark rights will be impaired or impeded if they are not joined herein, the court cannot find that the absent parties are necessary under subsection (a)(1)(B)(i).

Finally, the court must determine whether NFT and AL are necessary parties under subsection (a)(1)(B)(ii). A party is necessary under this subsection if its absence from the action would leave either the plaintiff or the defendant "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Defendant claims that this suit is like any other action where multiple parties claim ownership to a piece of property, and that in such cases absent claimants who have asserted rights to the property are typically found to be necessary in order "to avoid duplicative litigation, unnecessary costs, and potentially inconsistent judgment." (ECF No. 76 at 14.)

The court is not persuaded by defendant's argument that the instant action is analogous to traditional property disputes where multiple claimants assert opposing

interests in a single property. Here, plaintiff asserts no right in *Armageddon* or "Buck Rogers." Plaintiff "assumes and does not deny that [defendant] is the sole owner of the [Nowlan's] rights in [*Armageddon*], but only to the extent that any such rights are valid and existing." ([ECF No. 73 at ¶ 27](#).) Plaintiff does not claim a property right to *Armageddon*; rather, plaintiff seeks a declaratory judgment from the court that *Armageddon* and "Buck Rogers" have entered the public domain. Defendant cites no decision, and the court is aware of no decision, where a party was simultaneously engaged in litigation with respect to the expiration of a copyright in one forum and in a dispute regarding trademark in another forum, and the court ordered joinder pursuant to subsection (a)(1)(B)(ii).

More importantly, defendant did not show that it will suffer multiple *obligations* if NFT and AL are not joined to the instant action, as required under subsection (a)(1)(B)(ii). If this court finds that the copyrights in question have entered the public domain, this determination would have no effect on the obligations defendants may or may not owe NFT and AL under *trademark* law. *See* [Frederick Warne Co., 481 F. Supp. at 1196](#). Conversely, were the court to determine that the material is *not* in the public domain, this court cannot conceive of any possible effect that decision would render on defendant's obligations in its actions against NFT and AL. The court's decision in this matter will not subject defendant to a *substantial risk of multiple obligations*; in fact, the only consequence that would result from joining NFT and AL to the instant action is that this court would have to consider an unrelated matter concerning trademark rights, as

16

between defendant and NFT, as well as between defendant and AL. Under these circumstances, the absent parties are not necessary under Rule 19, and the court may proceed without joining these parties to the instant action.

Because defendant did not show that the absent parties are necessary parties under Rules 12(b)(7), the court will deny defendant's request to join NFT and AL as necessary parties or to dismiss for lack of indispensable parties.

### IV. Conclusion

For the reasons set forth in this opinion, the court will: (1) deny defendant's Rule 12(b)(1) motion to dismiss; and (2) deny defendants motion for joinder of necessary parties or dismissal for lack of indispensable parties under Rules 12(b)(7) and 19.

**DATED**: March 23, 2017            **/s/ JOY FLOWERS CONTI**
Joy Flowers Conti
Chief United States District Judge